UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AIR TRANSPORT ASSOCIATION OF
AMERICA, INC. d/b/a AIRLINES FOR
AMERICA,

          Plaintiff,

v

SUSAN CORBIN, in her official capacity
as Director of Labor and Economic
Opportunity,

          Defendant.

Case No. 1:25-cv-01945-JMB-SJB

HON. JANE M. BECKERING

MAG. SALLY J. BERENS

---

Stephanie A. Douglas (P70272)
Nicole Haelterman (P82922)
Roger Peter Meyers (P73255)
Co-Counsel for Plaintiff
100 West Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
douglas@bsplaw.com
haelterman@bsplaw.com
meyers@bsplaw.com

James R. Carroll
Alisha Q. Nanda
Emily M. Jennings
Christopher Corcoran
Co-Counsel for Plaintiff
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
alisha.nanda@skadden.com
emily.jennings@skadden.com
christopher.corcoran@skadden.com

Zachary A. Risk (P75392)
Kami L. Trescone (P83048)
Assistant Attorneys General
Attorneys for Defendant
Department of Attorney General
Labor Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7641
RiskZ1@michigan.gov
TresconeK@michigan.gov

/

## SUSAN CORBIN'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Pursuant to Fed R. Civ. P. 12(b)(6), Defendant Susan Corbin moves for dismissal of Plaintiff's Complaint, and states:

1.  On January 23, 2026, in accordance with Local Rule 7.1(d)(i), there was a conference between the parties where Defendant explained the nature of this motion and its legal basis, and sought but did not obtain concurrence.

2.  This Court should dismiss Plaintiff's complaint because Plaintiff failed to sufficiently plead a constitutional violation or that Michigan's Earned Sick Time Act, Mich. Comp. Laws § 408.961 *et seq.*, is preempted by federal law.

3.  This Court should dismiss Plaintiff's complaint because Plaintiff has failed to establish that it is entitled to injunctive relief, specifically that Plaintiff has a strong likelihood of success on the merits and that it will suffer irreparable injury absent an injunction, and further that these interests outweigh the harm to airline employees in Michigan and the general public interest.

WHEREFORE, Defendant Susan Corbin requests that this Honorable Court dismiss Plaintiff's complaint in its entirety with prejudice and award any appropriate costs and fees.

Respectfully submitted,

*s/ Zachary A. Risk*
Zachary A. Risk (P75392)
Assistant Attorney General
Attorney for Defendant
Department of Attorney General
Labor Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7641
RiskZ1@michigan.gov

Dated:  January 28, 2026

2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AIR TRANSPORT ASSOCIATION OF
AMERICA, INC. d/b/a AIRLINES FOR
AMERICA,

              Plaintiff,

v

SUSAN CORBIN, in her official capacity
as Director of Labor and Economic
Opportunity,

              Defendant.

Case No. 1:25-cv-01945-JMB-SJB

HON. JANE M. BECKERING

MAG. SALLY J. BERENS

Stephanie A. Douglas (P70272)
Nicole Haelterman (P82922)
Roger Peter Meyers (P73255)
Co-Counsel for Plaintiff
100 West Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
douglas@bsplaw.com
haelterman@bsplaw.com
meyers@bsplaw.com

James R. Carroll
Alisha Q. Nanda
Emily M. Jennings
Christopher Corcoran
Co-Counsel for Plaintiff
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
alisha.nanda@skadden.com
emily.jennings@skadden.com
christopher.corcoran@skadden.com

Zachary A. Risk (P75392)
Kami L. Trescone (P83048)
Assistant Attorneys General
Attorneys for Defendant
Department of Attorney General
Labor Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7641
RiskZ1@michigan.gov
TresconeK@michigan.gov

          /

**SUSAN CORBIN'S BRIEF IN SUPPORT OF HER MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**ORAL ARGUMENT REQUESTED**

Zachary A. Risk (P75392)
Assistant Attorney General
Attorney for Defendant
Department of Attorney General
Labor Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7641
RiskZ1@michigan.gov

Dated:  January 28, 2026

**TABLE OF CONTENTS**

<u>Page</u>

Index of Authorities ...............................................................................................iii

Concise Statement of Issue Presented....................................................................vii

Controlling or Most Appropriate Authority...........................................................vii

Introduction ............................................................................................................. 1

Statement of Facts.................................................................................................... 2

Argument .................................................................................................................. 4

I.      A4A fails to state an enforceable claim and a balancing of the equities
        weighs against enjoining Michigan's paid sick leave law. ............................... 4

        A.      The ESTA does not significantly impact airline prices, routes, or
                market entry, nor does it indirectly affect these aspects of air
                travel, and thus the ESTA is not preempted by the ADRA.................... 4

                1.      The ADRA and U.S. Supreme Court case law establish its
                        broad, *but not unlimited*, preemptive application........................ 5

                2.      The Ninth Circuit Court of Appeals has ruled that a state
                        paid sick leave law is not preempted by the ADRA, and
                        recent district court case law improperly expands the
                        preemptive application of the ADRA. ........................................... 8

                3.      The ESTA is not preempted because its connection to
                        airline prices, routes, or services is remote or tenuous at
                        best. ............................................................................................. 12

        B.      A4A fails to satisfy the requirements of this Court issuing the
                extraordinary remedy of a permanent injunction................................. 14

                1.      A4A has not shown a strong likelihood of success on the
                        merits. .......................................................................................... 15

                2.      A4A will not suffer irreparable harm. ........................................ 16

                3.      Issuing an injunction deprives Michigan workers of the
                        right to use benefits bestowed by the ESTA, which is
                        contrary to the public interest. .................................................. 16

Conclusion and Relief Requested.......................................................................... 18

i

Certificate of Compliance ........................................................................ 19

Certificate of Service.............................................................................. 20

ii

# INDEX OF AUTHORITIES

<u>Page</u>

**Cases**

*Abney v. Amgen, Inc.,*
   443 F.3d 540 (6th Cir. 2006) ................................................................................. 16

*Air Transp. Ass'n. of America v. City & Co. of San Francisco,*
   266 F.3d 1064 (9th Cir. 2001) ............................................................................. 9, 12

*Air Transp. Ass'n. of America, Inc. v. Campbell,*
   No. 18-cv-10651, 2023 WL 3773743 (D. Mass. June 2, 2023) ............................... 11

*Air Transp. Ass'n. of America, Inc. v. Moss,*
   No. 23-cv-02421 WL 4369137 (Dist. Colo. Sept 30, 2024) .................................... 10

*Air Transp. Ass'n. of America, Inc. v. Washington Dep't. of Labor and Indus.,*
   859 Fed. Appx. 181 (9th Cir. 2021), *cert. denied* 142 S. Ct. 2903 (2022) ........... 8, 12

*American Airlines v. Wolens,*
   513 U.S. 219 (1995) ............................................................................... 6, 9, 12, 13

*Bonnell v. Lorenzo,*
   241 F.3d 800 (6th Cir. 2001) ................................................................................. 14

*Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,*
   519 U.S. 316 (1997) ............................................................................... 7, 9, 11, 12

*Chabad of S. Ohio v. City of Cincinnati,*
   363 F.3d 427 (6th Cir. 2004) ................................................................................. 14

*Coal. to Defend Affirmative Action v. Granholm,*
   473 F.3d 237 (6th Cir. 2006) ................................................................................. 17

*Delta Air Lines, Inc. v. New York Dep't. of Consumer Affairs and Salas,*
   564 F. Supp. 3d 109 (E.D.N.Y. 2021) ............................................................... 10, 11

*Eagle-Picher Indus., Inc.,*
   962 F.2d 855 (6th Cir. 1992) ................................................................................. 15

*Egelhoff v. Egelhoff ex rel. Breiner,*
   532 U.S. 141 (2001) .............................................................................................. 12

*Gault v. City of Battle Creek*,
73 F. Supp. 2d 811 (W.D. Mich. 1999) ................................................................. 15

*Jolivette v. Husted*,
694 F.3d 760 (6th Cir. 2012) ........................................................................ 14, 15

*Maryland v. King*,
567 U.S. 1301 (2012) ............................................................................................ 17

*Morales v. Trans World Airlines, Inc.*
504 U.S. 374 (1992) ...................................................................................... passim

*Mothering Justice v. Attorney General*,
__ N.W.3d __, 515 Mich. 328 (Mich. 2024), *clarified at* 10 N.W.3d 845
(Mich. 2024) ........................................................................................................... 2

*Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*,
325 F.3d 712 (6th Cir. 2003) ............................................................................... 15

*NEOCH v. Blackwell*,
467 F.3d 999 (6th Cir. 2006) ............................................................................... 15

*New Motor Vehicle Bd., of Cal. V. Orrin W. Fox Co.*,
434 U.S. 1345 (1977) ........................................................................................... 17

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................................................. 16

*Northwest, Inc. v. Ginsberg*,
572 U.S. 273 (2014) ........................................................................................ 7, 13

*Ohio Republican Party v. Brunner*,
543 F.3d 357 (6th Cir. 2008) ............................................................................... 15

*Rowe v. New Hampshire Motor Transp. Ass'n.*,
552 U.S. 364 (2008) ............................................................................................. 14

*S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*,
860 F.3d 844 (6th Cir. 2017) ............................................................................... 14

*Sandison v. Michigan High School Athletic Ass'n., Inc.*,
64 F.3d 1026 (6th Cir. 1995) ............................................................................... 14

*Shaw v. Delta Air Lines, Inc.*
463 U.S. 85 (1983) ................................................................................................. 6

*Stenberg v. Cheker Oil Co.,*
    573 F.2d 921 (6th Cir. 1978) ................................................................. 15

*Thompson v. Dewine,*
    959 F.3d 804 (6th Cir. 2020) ................................................................. 17

*Ward v. United Airlines, Inc.,*
    986 F.3d 1234 (9th Cir. 2021) ............................................................... 13

*Winter v. Natural Resources Defense Council, Inc.,*
    555 US 7 (2008) ............................................................................... 15, 16

**Statutes**

29 U.S.C. § 1144(a) ...................................................................................... 6

49 U.S.C. § 41713 .......................................................................................... 5

49 U.S.C. § 41713(b)(1) ........................................................................ 5, 6, 12

Mich. Comp. Laws § 408.961 ......................................................................... 2

Mich. Comp. Laws § 408.962(g) ..................................................................... 2

Mich. Comp. Laws § 408.962(h)(i)–(viii) ....................................................... 3

Mich. Comp. Laws § 408.963(11)(b) ............................................................... 3

Mich. Comp. Laws § 408.963(3) ..................................................................... 3

Mich. Comp. Laws § 408.963(5) ..................................................................... 3

Mich. Comp. Laws § 408.964(1)(a) ................................................................. 3

Mich. Comp. Laws § 408.964(1)(b) ................................................................. 3

Mich. Comp. Laws § 408.964(1)(c) ................................................................. 3

Mich. Comp. Laws § 408.964(3)(a) ................................................................. 3

Mich. Comp. Laws § 408.964(6) ..................................................................... 3

Mich. Comp. Laws § 408.966(3) ..................................................................... 3

Mich. Comp. Laws § 408.967(2) ..................................................................... 2

Mich. Comp. Laws § 408.972(1) ..................................................................... 4

Mich. Comp. Laws § 408.972(2) ................................................................................. 4

Wash. Rev. Code § 49.46.210.................................................................................... 8

**Rules**

29 C.F.R. § 925.801 .................................................................................................. 3

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2............................................................................................ 4

## CONCISE STATEMENT OF ISSUE PRESENTED

1. Should Plaintiff's request for a declaratory ruling and the extraordinary relief of a permanent injunction be denied where Plaintiff has not demonstrated Michigan's Earned Sick Time Act is preempted by federal law, has not demonstrated any irreparable harm, is not likely to succeed on the merits of its constitutional challenge, and where the remaining factors weigh in favor of Defendant?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>Authority</u>:    *Air Transp. Ass'n. of America, Inc. v Washington Dep't of Labor and Indus.*, 859 Fed. Appx. 181 (9th Cir. 2021).

## INTRODUCTION

Michigan has ensured that all employees in this state—regardless of what industry they work in—are afforded a minimal amount of sick leave that can be used without fear of retribution from their employer.  This law bears no connection to, and on its face does not relate to, the prices, routes, or services offered by airlines in Michigan.  At best, any connection that could be drawn is remote or tenuous. Consistent with the Supreme Court's precedent on airline-related preemption, and confirmed by the only Court of Appeals to address this issue, Michigan's law is not preempted and applies to airline employees.

Plaintiff Air Transport Association of America, Inc. (A4A) brought this action on behalf of the various airlines it represents and urges this Court to declare that Michigan's paid sick leave law is preempted and requests a permanent injunction be issued from the law's application to airline employees in Michigan.  A4A repeatedly states that airline workers already receive "generous" paid leave benefits and offers only conclusory and speculative harms to airline operations in support of its requested relief.  While A4A points to two district courts that have ruled state paid sick leave laws were preempted by the Airline Deregulation Act, those cases were not appealed and are otherwise nonbinding; indeed, they simply got it wrong. Rather, the Ninth Circuit Court of Appeals has ruled otherwise: that a state's paid sick leave law is not preempted by the Airline Deregulation Act.

Because Michigan's paid sick leave law does relate to or have a connection with airline prices, routes, or services, this Court should dismiss A4A's complaint with prejudice in its entirety.

1

## STATEMENT OF FACTS

Defendant Susan Corbin is the Director of Michigan's Department of Labor and Economic Opportunity.  The Department's Wage and Hour Division is responsible for administering and enforcing Michigan's Earned Sick Time Act (ESTA), Mich. Comp. Laws § 408.961 *et seq*.  Corbin is named in her official capacity as the Director who enforces the ESTA.  Mich. Comp. Laws § 408.967(2).  (ECF No. 1, PageID.4, ¶ 9.)  Michigan's paid sick leave law began as a citizen initiative in 2018.  The Michigan Legislature adopted that initiative and subsequently amended it in the same legislative session.  At that point, Michigan law operated under the former Paid Medical Leave Act.

On July 31, 2024, following a legal challenge to the Legislature's "adopt and amend" procedure, the Michigan Supreme Court voided the 2018 amendments.  *See Mothering Justice v. Attorney General*, __ N.W.3d __, 515 Mich. 328 (Mich. 2024), *clarified at* 10 N.W.3d 845 (Mich. 2024).  (ECF No. 1, PageID.15, ¶ 48.)  Specifically, the Court ruled that the Legislature unconstitutionally amended the citizen initiatives involving minimum wage and paid sick leave, after adopting them in the same Legislative session.  *Id*.  The Court ordered the original initiatives to become effective on February 21, 2025.  *Id*.  The ESTA is now the existing law governing paid sick leave in Michigan.

The ESTA applies to nearly all employers in Michigan, including the airlines that A4A represents.  *See* Mich. Comp. Laws § 408.962(g).  The ESTA ensures that, at a minimum, employees earn 1 hour of paid sick leave for every 30 hours worked, and the ESTA assumes that airline flight crew employees will have worked not less

2

than 40 hours in each workweek or 30 hours if employed by a small business.  Mich. Comp. Laws § 408.963(11)(b) (citing 29 C.F.R. § 925.801).  Employees may use up to 72 hours of leave per year, but employers may set higher limits.  Mich. Comp. Laws § 408.963(3).  Employees may carry over up to 72 hours of unused leave per year unless the employer elects to frontload 72 hours of leave at the beginning of a year. Mich. Comp. Laws § 408.963(5).

Employees are allowed to use accrued leave for many purposes involving the employee and their family members, such as mental or physical illness, injury, or health condition, medical care, and needs resulting from sexual assault or domestic violence.  Mich. Comp. Laws § 408.964(1)(a)–(c).  "Family member" broadly encompasses individuals related by blood or by law, and those individuals "whose close association with the employee is the equivalent of a family relationship." Mich. Comp. Laws § 408.962(h)(i)–(viii).  Employers may not require more than seven days' notice if leave is foreseeable, and employers may require notice "as soon as practicable" for unforeseeable leave.  Mich. Comp. Laws § 408.964(3)(a). Employers may not require supporting documentation until employees are absent for more than three consecutive workdays.  Mich. Comp. Laws § 408.964(6). Employers are also prohibited from using an "absence control policy" that considers use of paid leave as grounds for taking adverse personnel action.  Mich. Comp. Laws § 408.966(3).

Collective bargaining agreements cannot waive an employee's rights under the ESTA, and the agreements will generally control until their stated expiration

3

date.  Mich. Comp. Laws § 408.972(1)–(2).  The ESTA applies to many of the

airlines' flight attendants and ground crew employees.  (ECF No. 1, PageID.18–19,

¶¶ 63–64.)

Air Transport Association of America, Inc. (A4A) brought this action seeking

a declaration from this Court that the ESTA is preempted under the Airline

Deregulation Act of 1978 and the Supremacy Clause, U.S. Const. art. VI, cl. 2, and

an order permanently enjoining Michigan from enforcing the ESTA as to Michigan

airlines.  For the reasons below, A4A has failed to state a claim, and its complaint

should be dismissed with prejudice in its entirety.

## ARGUMENT

**I.**    **A4A fails to state an enforceable claim and a balancing of the equities weighs against enjoining Michigan's paid sick leave law.**

For A4A to prevail, it must establish that the ESTA has a significant impact

on airline prices, routes, or services, or new market entry.  But A4A's claim falls

short, as it is based on speculative, attenuated, and indirect harm.  Regardless,

even if it can establish *an* impact, the connection and relation of granting employees

paid sick leave to the airlines' increase costs of doing business is too tenuous for this

Court to find the ESTA is preempted.

**A.**    **The ESTA does not significantly impact airline prices, routes, or market entry, nor does it indirectly affect these aspects of air travel, and thus the ESTA is not preempted by the ADRA.**

Whether the ESTA is preempted has not been addressed yet in Michigan.

The Supreme Court has, on several occasions, analyzed preemption under the

Airline Deregulation Act of 1978, and the Ninth Circuit Court of Appeals has ruled that Washington's paid sick leave law is not preempted.  Three district courts have either come to a different result or are weighing the issue.  But using the Supreme Court jurisprudence as establishing the general preemption principles under the ADRA, combined with the Ninth Circuit Court of Appeals' sound decision on this very issue, this Court should reach the same conclusion and determine the ESTA is not preempted.

> **1.     The ADRA and U.S. Supreme Court case law establish its broad, *but not unlimited*, preemptive application.**

In 1978, Congress passed the Airline Deregulation Act (ADRA), 49 U.S.C. § 41713 *et seq*., which amended numerous laws applicable to airlines.  (ECF No. 1, PageID.26–27, ¶ 88.)  Relevant here, states "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ."  49 U.S.C. § 41713(b)(1).  (ECF No. 1, PageID.26–27, ¶ 88–89.)  While courts have interpreted this language to have broad application, it does not summarily preempt all state laws that could conceivably have an effect on air travel, regardless of how tenuous or indirect that effect may be.

In *Morales v. Trans World Airlines, Inc.*, the Supreme Court analyzed whether the ADRA preempted state regulation that prohibited deceptive airfare advertisements.  504 U.S. 374, 378 (1992).  The Court reasoned that the meaning of the phrase "related to" in the ADRA "is a broad one . . . and the words thus express a broad pre-emptive purpose."  *Id*. at 383.  The Court further analogized the phrase

5

to that in the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1144(a), noting its "broad scope" and "expansive sweep," and being "broadly worded," "deliberately expansive," and "conspicuous for its breadth." *Id.* at 384 (internal citations omitted).  The Court then adopted the same application it applies to ERISA preemption, which requires a "connection with or reference to" the applicable airline operations:

> a state law 'relates to' an employee benefit plan, and is pre-empted by ERISA, 'if it has a connection with, or reference to, such a plan.' *Shaw v. Delta Air Lines, Inc.* 463 U.S. 85, 95 (1983).  Since the relevant language of the [ADRA] is identical, we think it appropriate to adopt the same standard here: State enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted under [49 U.S.C. § 41713(b)(1).]  [*Id.*]

Despite finding the law in question was preempted, the Court acknowledged "'[t]he present litigation plainly does not present a borderline question, and we express no views about where it would be appropriate to draw the line.'" *Id.* at 390, *quoting Shaw*, 463 U.S. at 100.  Further, that "'[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect." *Id.*

These principles were mostly reaffirmed two years later in *American Airlines v. Wolens*, 513 U.S. 219 (1995) (barring statutory claims relating to the airline's devaluation of reward miles, but not common law breach of contract claims).  There, the Court limited the scope of ADRA preemption in *Morales* by allowing state contract claims to proceed.  *Id.* at 226, 230–233.  Indeed, "*Morales* also left room for state actions 'too tenuous, remote, or peripheral . . . to have pre-emptive effect.'" *Id.* at 224, *quoting Morales*, 504 U.S. at 390.

The Court next considered this issue in 2014 when it held that a breach of implied covenant claim related to "rates, routes, or services" because it "clearly has such a connection." *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014). The Court reasoned that the claim sought to reinstate the airline's frequent flyer program, which bestowed valuable benefits like flight upgrades. *Id.* "Like the frequent flyer program in *Wolens*, the Northwest program is connected to the airline's 'rates' because the program awards mileage credits that can be redeemed for tickets and upgrades." *Id.* By using program miles, then, the customer reduces or eliminates the rate they pay for a flight. *Id.* For similar reasons, the program is connected to airline "services" because customers can access different flights and higher service categories. *Id.*

These cases establish that while the ADRA is to be applied broadly to allow the free market to dictate prices and airline service, it is not all-encompassing. Indeed, "[the ADRA] eliminated federal regulation of rates, routes, and services in order to allow those aspects of air transportation to be set by market forces, and the pre-emption provision was included to prevent the States from undoing what the Act was meant to accomplish." *Northwest, Inc.*, 572 U.S. at 283. But nothing in the text of the ADRA nor Supreme Court jurisprudence establishes that the ADRA preempts *all* state regulations that have *any* impact on airline operations. *See Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 334 (1997) ("We could not hold pre-empted a state law in an area of traditional state regulation based on so tenuous a relation without doing grave violent to our

7

presumption that Congress intended nothing of the sort.")  Also true is that each of these cases finding preemption involved regulations that directly impacted benefits to customers, and the Court thus ruled were connected to airline rates, routes, and services.

> **2.    The Ninth Circuit Court of Appeals has ruled that a state paid sick leave law is not preempted by the ADRA, and recent district court case law improperly expands the preemptive application of the ADRA.**

A4A raised identical arguments in 2021 challenging Washington's paid sick leave law, Wash. Rev. Code § 49.46.210, which is substantially similar to the ESTA. There, the Ninth Circuit Court of Appeals held that the law did not violate the Dormant Commerce Clause and was not preempted by the ADRA.  *Air Transp. Ass'n. of America, Inc. v. Washington Dep't. of Labor and Indus.*, 859 Fed. Appx. 181 (9th Cir. 2021), *cert. denied* 142 S. Ct. 2903 (2022).  For the same reasons, this Court should come to the same conclusion that the ESTA is not preempted.

In *Washington Department of Labor*, the Ninth Circuit noted that "[s]tate laws that affect rates, routes, or services in 'too tenuous, remote, or peripheral a manner' are not preempted." *Id.*, *quoting Morales*, 504 U.S. at 390.  Further, the Ninth Circuit reasoned that "generally applicable labor regulations are too tenuously related to airlines' services to be preempted by the [ADRA]." *Id.* Crucially, the Ninth Circuit reasoned, "because the [paid sick leave law] does not regulate the airline-customer relationship or otherwise bind the airlines to a particular price, route, or service, it is not preempted by the [ADRA]." *Id.*, *citing Air*

8

*Transp. Ass'n. of America v. City & Co. of San Francisco*, 266 F.3d 1064 (9th Cir. 2001).

*Washington Department of Labor* was essentially a reaffirmation of the Ninth Circuit's 2001 decision to uphold an ordinance requiring employee benefits be provided equally to married couples and employees with domestic partners. *City & Co. of San Francisco*, 266 F.3d at 1070–1075. The Ninth Circuit noted the Supreme Court's "connection with or reference to" analysis from *Morales* and *Wolens*, and it explained that "reference to" preemption "occurs '[w]here a State's law acts immediately and exclusively upon [price, route or service] . . . or where the existence of [a price, route or service] is essential to the law's operation.'" *Id.* at 1071, *quoting Dillingham Constr., N.A., Inc.*, 519 U.S. at 325. In concluding that the ordinance was not preempted, the Ninth Circuit made many important observations:

> The Ordinance is a broad law applying to hundreds of different industries . . . . There is no indication that when Congress passed the [ADRA], it intended to preempt states and local governments from passing laws that forbid employers from discriminating in their provision of employment benefits. . . . Simply put, the Airlines take many factors into consideration when choosing their routes and services, including the costs of complying with regulatory requirements . . . . Indeed, the costs of providing domestic partner employment benefits . . . are a small, if not inconsequential, fraction of the Airlines' costs of flying . . . . [*Id.* at 1072–1074.]

With these considerations, the Ninth Circuit held that the ordinance did not act immediately and exclusively on a price, route, or service; the ordinance was not dependent on a particular price, route, or service; and the ordinance did not bind the airlines to a particular price, route, or service. *Id.* at 1072–1075.

9

Despite the Ninth Circuit's decisions in *Washington Department of Labor* and *City & County of San Francisco*, two district courts have since ruled that state or local sick leave laws were preempted under the ADRA.[1]  Late in 2021, the Eastern District of New York declined to follow the Ninth Circuit's decision in *Washington Department of Labor* and concluded that the ADRA preempted New York City's sick leave law.  *Delta Air Lines, Inc. v. New York Dep't. of Consumer Affairs and Salas*, 564 F. Supp. 3d 109 (E.D.N.Y. 2021).  The court reasoned that no other circuit court has applied as narrow of a standard as used by the Ninth Circuit.  *Id.* at 118.  However, the court also held that there was a second step in the preemption analysis that determines whether a relation is substantial enough.  *Id.* at 119–120.  When evaluating the facts of that case, the court held, somewhat circularly, that "[b]ecause the Act relates to flight attendants and their availability at the time they are scheduled to work, the Court finds that the Act relates to a covered service under the [ADRA.]"  *Id.* at 120.  The court reasoned that the significance of the impact is "a mixed question of law and fact," and while the facts could not be resolved at the summary judgment stage, the impact was significant as a matter of law because it subjected the airlines to "a patchwork of state laws that will undermine its ability to compete in a deregulated marketplace . . . ."  *Id.* at 121.  Finally, because the "'tenuous, remote, or peripheral' language in *Morales* is more about the directness of the impact, or centrality of the impact to a service,

---

[1] The issue is also pending in Colorado District Court on a challenge to Colorado's state sick leave law.  *See Air Transp. Ass'n. of America, Inc. v. Moss*, No. 23-cv-02421, 2024 WL 4369137 (Dist. Colo. Sept 30, 2024).

10

regardless of the impact level," the court concluded that there was sufficient impact to be preempted.  *Id*. at 123, *quoting Morales*, 504 U.S. at 390.

The Eastern District of New York's decision, however, fails to acknowledge Supreme Court precedent that assumes areas typically regulated by states are not preempted unless expressly intended by Congress.  *Dillingham Constr., N.A., Inc.*, 519 U.S. at 325.  Further, the district court appears to have altered the ADRA preemption test by reasoning that frustrating the purpose of the ADRA may, alone, render a state law preempted.  *Delta Air Lines, Inc.*, 564 F. Supp. 3d at 120.  Thus, the reasoning in *Delta Air Lines, Inc.* is not instructive.

The Massachusetts District Court, in June 2023, reached a similar conclusion in favor of A4A on its sole claim that the ARDA preempted the state sick leave law. *Air Transp. Ass'n. of America, Inc. v. Campbell*, No. 18-cv-10651, 2023 WL 3773743 (D. Mass. June 2, 2023).  The court concluded that allowing the state sick leave law to apply to airline employees would cause an increase in employee sick calls, which would necessarily have a significant impact on the airlines' services.  *Id*. at *11–12. The court's decision, however, relied on yet another variation of ADRA preemption analysis that asks if a state law "has an impact on airline prices, routes, or services and that such impact is significant, as opposed to tenuous, remote, or peripheral, it is preempted by the [ADRA]."  *Id*. at *10.  This decision improperly shifts the "connection with or relation to" analysis from the law's terms to the law's "logical effect."  *Id*. at *10–11.  Likewise, this case does not instruct this Court's outcome.

11

3.      **The ESTA is not preempted because its connection to airline prices, routes, or services is remote or tenuous at best.**

The issue before this Court is identical to that already decided by the Ninth Circuit in *Washington Department of Labor and Industries*, 859 Fed. Appx. 181, and this Court should come to the same conclusion.  As discussed, the Supreme Court in *Morales* and *Wolens* has held that preemption under the ADRA is present when state regulations have a connection with or reference to airline rates, routes, or services.  *See* 49 U.S.C. § 41713(b)(1).  Even assuming there is an increase in sick leave usage by airline employees under the ESTA, the ESTA is not connected with, and has no reference to, airline prices, routes, service, or new market entry.  As the Ninth Circuit noted, reference to requires the ESTA to act immediately and exclusively on airline prices, routes, or services.  The ESTA does not.  Nor does its operation rely on airline prices, routes, or services.  *See City & Co. of San Francisco*, 266 F.3d at 1071, *quoting Dillingham Constr., N.A., Inc.*, 519 U.S. at 325.  Indeed, the ESTA functions independent of airlines and every other industry, and it does not mention or directly impact airline prices, routes, or services.  Likewise, the ESTA does not regulate the relationship between airlines and its customers or otherwise bind the airlines to a particular price, route, or service.  *City & Co. of San Francisco*, 266 F.3d at 1074, *citing Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001).

A4A's argument, in essence, boils down to this: the ESTA affords employees additional sick leave uses and protections, this may require additional hiring, thus the ESTA should be preempted.  (ECF No. 1, PageID.27–28, ¶¶ 90–93.)  What A4A's

12

complaint fails to acknowledge is that the speculative harms it alleges, e.g. significant impacts on boardings, departures, bagged loading, maintenance services, and services at ticket counters, are at best tenuously connected to the ESTA, and purely speculative.  A4A offers no empirical allegation that improved sick leave benefits has, in fact, caused changes in prices, routes, service, or new market entry. Rather, it manufactures the connection with or relation to the ESTA and asks this Court to accept its own speculation as true.

To be sure, the impact of the ESTA is remote as it only increases the minimum hours of sick leave employees earn, expands the authorized use for sick leave, and prohibits adverse action against employees who use their earned sick leave.  There is simply no rational connection between a generally applicable state labor law, which governs the minimal provision of sick leave benefits for all employees in all industries, and the prices, routes, and services offered by airlines. Had Congress intended to preempt states' employment-related laws, it certainly could have expressly preempted all state regulation and not limited it to those regulations impacting *only* the airlines' prices, routes, and services.  Finally, this outcome is consistent with the Supreme Court's decisions in *Morales*, *Wolens*, and *Ginsberg* that found preemption as those cases involved the customer-airline relationship, not the employee-airline relationship.  At bottom, employee sick leave benefits are too tenuous and apply to all Michigan employees equally, thus leaving the ESTA outside the ambit of ADRA preemption.  *See Ward v. United Airlines, Inc.*, 986 F.3d 1234, 1243 (9th Cir. 2021) ("Laws that apply to airline employees only

13

as they apply to all members of the general public typically fall into this non-preempted category."), *citing Rowe v. New Hampshire Motor Transp. Ass'n.*, 552 U.S. 364, 375–376 (2008).  For these reasons, the ADRA does not preempt the ESTA and A4A's complaint should be dismissed.

> **B.    A4A fails to satisfy the requirements of this Court issuing the extraordinary remedy of a permanent injunction.**

Injunctive relief "is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'"  *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001).  Injunctions are extraordinary remedies that should be granted only "upon a clear showing that the plaintiff is entitled to such relief and proof that the circumstances clearly demand it."  *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (citations omitted). Courts consider four factors when determining whether injunctive relief should be granted:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. [*Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012) (*quoting Chabad of S. Ohio v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004)); *see also Sandison v. Michigan High School Athletic Ass'n., Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995).]

The analysis for a permanent injunction is generally similar to that for a preliminary injunction, except that the moving party must show actual success on the merits instead of a strong likelihood of success.  *Jolivette*, 694 F.3d at 765.

14

Further, these factors must be balanced and are used to "guide the discretion of the court; they are not meant to be rigid and unbending requirements." *Gault v. City of Battle Creek*, 73 F. Supp. 2d 811, 814 (W.D. Mich. 1999) (*quoting In re Eagle-Picher Indus., Inc.*, 962 F.2d 855, 859 (6th Cir. 1992)). "[A] district court is not required to make specific findings concerning each of the four factors . . . if fewer factors are determinative of the issue." *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 717 (6th Cir. 2003). Importantly, courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Natural Resources Defense Council, Inc.*, 555 US 7, 24 (2008). Indeed, the burden rests with the party seeking the injunctive relief. *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

Here, A4A fails to establish that the requisite factors weigh in favor of granting an injunction and its request should be dismissed.

### 1.    A4A has not shown a strong likelihood of success on the merits.

The Sixth Circuit has long held that in determining whether to grant injunctive relief, the movant must show a "strong likelihood of success on the merits." *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008); *NEOCH v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). And for a permanent injunction, the movant must show actual success on the merits. *Jolivette*, 694 F.3d at 765. Here, A4A brings one claim: that the ESTA is preempted by the ADRA. (ECF No. 1, PageID.26–28, ¶¶ 85–93.) But, for the reasons detailed above, this

claim is unlikely to succeed because the ESTA does not substantially impact airline prices, routes, and services, as the connection is too tenuous; thus, it is not preempted under the ADRA.

### 2.    A4A will not suffer irreparable harm.

A plaintiff cannot simply show that irreparable harm is possible; a plaintiff must show that irreparable harm is likely without an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. at 20.  To demonstrate irreparable harm, the plaintiff must show "that . . . they will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006).  A4A thus must demonstrate certain and immediate irreparable harm for the grant of an injunction to be appropriate.

Here, A4A's alleged harms are speculative and unsubstantiated.  (ECF No. 1, PageID.20–25, ¶¶ 70–81.)  Curiously, each of the alleged harms are presented in the uncertain has-happened-or-will-happen context.  (*Id.*)  A4A's complaint also fails to identify how hiring additional personnel or having personnel on-call is a harm, let alone one justifying the issuance of an injunction.  Thus, A4A fails to establish this element for issuance of an injunction.

### 3.    Issuing an injunction deprives Michigan workers of the right to use benefits bestowed by the ESTA, which is contrary to the public interest.

Factors three and four in the injunctive analysis, i.e. harm to others and to the public, coincide in this case.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (these

16

harms "merge when the Government is the opposing party").  Here, the State's interests are paramount.  The U.S. Supreme Court has recognized that "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301 (2012) (C.J. Roberts in chambers) (*quoting New Motor Vehicle Bd., of Cal. V. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977)).  The ESTA, Mich Comp. Laws § 408.961 *et seq*., which A4A seeks to enjoin as to the airline industry, was not just duly enacted by the Michigan Legislature; it was the product of a citizen initiative. The State should continue to have the opportunity to apply this statute as written and to enforce violations of the same.

Indeed, Michigan airline workers have a right and interest in receiving the benefits bestowed by the ESTA and seeing its requirements be enforced.  "[G]iving effect to the will of the people by enforcing the laws they and their representatives enact serves the public interest."  *Thompson v. Dewine*, 959 F.3d 804, 812 (6th Cir. 2020) (*citing Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006)).

In sum, A4A has not demonstrated that the factors justifying the extraordinary relief of an injunction weigh in favor of enjoining Michigan's application and enforcement of the ESTA to Michigan airline employees.  This Court, therefore, should decline issue an injunction.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, Defendant Susan Corbin respectfully requests that this Court dismiss A4A's complaint for declaratory relief and a permanent injunction in its entirety and award any other costs and expenses that this Court deems appropriate.

Respectfully submitted,

*s/ Zachary A. Risk*
Zachary A. Risk (P75392)
Assistant Attorney General
Attorney for Defendant
Department of Attorney General
Labor Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7641
Dated:  January 28, 2026            RiskZ1@michigan.gov

18

**CERTIFICATE OF COMPLIANCE**

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of LCivR 7.2(b)(ii) because, excluding the part of the document exempted by said rule, this brief contains no more than 10,800 words.  This document contains 4,748 words.

2.      In compliance with LCivR 7.2(b)(ii), this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 12-point Century Schoolbook font.

*s/ Zachary A. Risk*
Zachary A. Risk (P75392)
Assistant Attorney General
Attorney for Defendant
Department of Attorney General
Labor Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7641
RiskZ1@michigan.gov

19

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2026, I electronically filed the above documents with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*s/ Zachary A. Risk*
Zachary A. Risk (P75392)
Assistant Attorney General
Attorney for Defendant
Department of Attorney General
Labor Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7641
RiskZ1@michigan.gov