UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

AIR TRANSPORT ASSOCIATION OF
AMERICA, INC. d/b/a AIRLINES FOR
AMERICA,

       Plaintiff,

   v.

SUSAN CORBIN, in her official capacity as
Director of Labor and Economic Opportunity,

       Defendant.

Case No. 1:25-cv-01945-JMB-SJB

HON. JANE M. BECKERING

**<u>ORAL ARGUMENT REQUESTED</u>**

---

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

James R. Carroll
Alisha Q. Nanda
Emily M. Jennings
Christopher L. Corcoran
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
Telephone:  (617) 573-4800
james.carroll@skadden.com
alisha.nanda@skadden.com
emily.jennings@skadden.com
christopher.corcoran@skadden.com

Stephanie A. Douglas
Roger P. Meyers
Nicole K. Haelterman
BUSH SEYFERTH PLLC
100 West Big Beaver Road, Suite 400
Troy, MI  48084
Telephone:  (248) 822-7800
douglas@bsplaw.com
meyers@bsplaw.com
haelterman@bsplaw.com

*Counsel for Plaintiff*
*Air Transport Association of America, Inc.*
*d/b/a Airlines for America*

Dated:  February 25, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................... 3

      A.    The Airlines' CBAs And Company Policies Provide Significant Paid Time Off, Drive Employee Accountability, And Protect Airline Operations ..........................3

      B.    The Michigan Law Has Increased And/Or Will Increase Employee Absences ..................................................4

      C.    Increased Employee Absences Have Had And/Or Will Have A Significant Impact On The Airlines' Prices, Routes, Or Services..........................4

LEGAL STANDARD ........................................................................................................... 6

ARGUMENT ........................................................................................................................ 6

I.    A4A PLAUSIBLY PLEADS AN ADA PREEMPTION CLAIM........................... 6

      A.    The ADA Preempts State Laws That Have A "Significant Impact" On Airline Prices, Routes, Or Services ................................6

      B.    Every Case Where The Airlines Or A4A Asserted ADA Preemption Of Paid Sick Leave Laws Has Proceeded To Discovery .....................8

      C.    A4A Plausibly Alleges That The Michigan Law Has Had, Or Will Have, A "Significant Impact" On The Airlines' Prices, Routes, Or Services ....................11

      D.    Defendant's Arguments That A4A's Complaint Should Be Dismissed Are Without Merit ...........................................13

            1.    Defendant Fails To Distinguish Supreme Court Precedent, Which Has Repeatedly Found Generally Applicable Laws Preempted By The ADA....................14

            2.    Defendant's Reliance On Ninth Circuit Precedent Is Misplaced..............15

            3.    Contrary To Defendant's Suggestions, The General Applicability Of The Michigan Law Does Not Affect The Preemption Analysis ....................17

            4.    Defendant Is Wrong To Suggest That The Complaint's Allegations Are "Speculative" Or That The Complaint Must Contain Empirical Allegations......................20

            5.    Defendant Cannot Rewrite A4A's Complaint .........................................22

II.    A4A'S COMPLAINT APPROPRIATELY SEEKS A PERMANENT INJUNCTION........................................................................ 23

CONCLUSION ................................................................................................................... 24

i

## TABLE OF AUTHORITIES

<u>**CASES**</u>                                                                                                              <u>**PAGE(S)**</u>

*Air Evac EMS v. Cheatham*,
910 F.3d 751 (4th Cir. 2018) ...................................................................................... 16

*Air Transport Association of America v. Blissenbach*,
No. 24-04657 (D. Minn. filed May 15, 2025), ECF No. 55 .........................................9, 13

*Air Transport Association of America v. Campbell*,
No. 18-10651-ADB, 2023 WL 3773743 (D. Mass. June 2, 2023) ................... 9, 10, 13, 24

*Air Transport Association of America v. Healey*,
No. 18-10651, 2021 WL 2256289 (D. Mass. June 3, 2021)............................................. 18

*Air Transport Association of America v. Moss*,
No. 23-02421-DDD-KAS, 2024 WL 4369137 (D. Colo. Sept. 30, 2024) ................... 9, 13

*Air Transport Association of America v. Washington Department of Labor and Industries*,
859 F. App'x 181 (9th Cir. 2021) ............................................................................... 9, 15

*American Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995)............................................................................................... 6, 8, 14

*Banks v. United States*,
614 F.2d 95 (6th Cir. 1980) ......................................................................................... 23

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................... 6

*Botz v. Omni Air International*,
286 F.3d 488 (8th Cir. 2002) .................................................................................. 18, 21

*Branche v. Airtran Airways, Inc.*,
342 F.3d 1248 (11th Cir. 2003) ................................................................................... 17

*California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.*,
519 U.S. 316 (1997)....................................................................................................... 19

*Chamber of Commerce v. Whiting*,
563 U.S. 582 (2011)....................................................................................................... 20

*Connecticut National Bank v. Germain*,
503 U.S. 249 (1992)....................................................................................................... 20

*Costello v. BeavEx, Inc.*,
    810 F.3d 1045 (7th Cir. 2016) .................................................................. 16, 18

*Courtright v. City of Battle Creek*,
    839 F.3d 513 (6th Cir. 2016) ....................................................................... 6, 21

*Delta Airlines, Inc. v. N.Y.C. Department of Consumer Affairs*,
    564 F. Supp. 3d 109 (E.D.N.Y. 2021) ............................................11, 13, 16, 21

*DiFiore v. American Airlines, Inc.*,
    646 F.3d 81 (1st Cir. 2011)............................................................................. 22

*Headstream Technoligies, LLC v. FedEx Corp.*,
    No. 22-1410, 2023 WL 1434054 (6th Cir. 2023) ........................................ 8, 15

*Hodges v. Delta Airlines, Inc.*,
    44 F.3d 334 (5th Cir. 1995) ........................................................................ 8, 15

*Jolivette v. Husted*,
    694 F.3d 760 (6th Cir. 2012) ...........................................................................23

*Jolivette v. Husted*,
    886 F. Supp. 2d 820 (S.D. Ohio 2012) ............................................................ 24

*Jolivette v. Husted*,
    No. 2:12-603 (S.D. Ohio filed July 16, 2012), ECF No. 11 ..............................24

*Madej v. Maiden*,
    951 F.3d 364 (6th Cir. 2020) ......................................................................... 23

*Massachusetts Delivery Association (MDA) v. Coakley*,
    769 F.3d 11 (1st Cir. 2014)........................................................................ 7, 18

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)................................................................................ *passim*

*New Motor Vehicle Board of California v. Orrin W. Fox Co.*,
    434 U.S. 1345 (1977)..................................................................................... 24

*Northwest, Inc. v. Ginsberg*,
    572 U.S. 273 (2014)............................................................... 6, 10, 14, 19

*Orrin W. Fox Co. v. New Motor Vehicle Bd. of State of California*,
    440 F. Supp. 436 (C.D. Cal. 1977) ................................................................. 24

*Puerto Rico v. Franklin California Tax-Free Trust*,
    579 U.S. 115 (2016)...................................................................................... 20

iii

*Rowe v. New Hampshire Motor Transp. Association*,
    552 U.S. 364 (2008) ................................................................................ 7, 19

*Schwann v. FedEx Ground Package System, Inc.*,
    813 F.3d 429 (1st Cir. 2016) ........................................................................ 16

*Ware v. Tow Pro Custom Towing and Hauling, Inc.*,
    289 F. App'x 852 (6th Cir. 2008) .................................................... 8, 10, 11, 15

*Watson v. Air Methods Corp.*,
    870 F.3d 812 (8th Cir. 2017) .............................................................. 16, 18, 21

*Wedgewood Limited Partnership I v. Township Of Liberty, Ohio*,
    610 F.3d 340 (6th Cir. 2010) ........................................................................ 23

*Wellons v. Northwest Airlines, Inc.*,
    165 F.3d 493 (6th Cir. 1999) ........................................................................ 18

*Witty v. Delta Air Lines*,
    366 F.3d 380 (5th Cir. 2004) ........................................................................ 16

## STATUTES & RULES                                        PAGE(S)

49 U.S.C. § 14501(c)(2)(A) ................................................................................ 19

49 U.S.C. § 41713(b)(1) ................................................................................. 1, 7

Fed. R. Civ. P. 12(b)(6) .................................................................................. 6

Mich. Comp. Laws § 408.961 et seq. ................................................................. 13

iv

## PRELIMINARY STATEMENT

In its Complaint, Plaintiff Air Transport Association of America, Inc., d/b/a Airlines for America ("A4A") alleges that the Michigan Earned Sick Time Act (the "ESTA" or the "Law") cannot be applied to A4A's members (the "Airlines")[1] because the Airline Deregulation Act ("ADA") preempts it.  The ESTA comprehensively regulates when, why, and how Airline employees can be absent from work, as well as how the Airlines can respond to employee absences.  It both (i) requires the Airlines to provide their employees with up to 72 hours of paid ESTA leave per year, and (ii) restricts the Airlines' accountability tools, such as attendance points systems and the ability to require documentation to substantiate absences under certain circumstances.  (Compl. ¶¶ 38-45 (ECF No. 1, PageID.13-14).)  A4A plausibly pleads its preemption claim, and Defendant's Motion To Dismiss (ECF No. 8 or "Mot.") should be denied.

The ADA preempts all state laws "related to a price, route, or service of an air carrier."  49 U.S.C. § 41713(b)(1).  The Supreme Court has observed that the ADA's preemption clause has a "broad scope," "expansive sweep," is "broadly worded," "deliberatively expansive," and "conspicuous for its breadth"—as Defendant's Motion expressly acknowledges.  (Mot. at 6 (ECF No. 8, PageID.52) (citations omitted).)  Accordingly, a state law is "related to" an Airline's prices, routes, or services, and therefore preempted, if it has a "significant impact" on the Airline's prices, routes, or services.  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992).  A state law can have a "significant impact" no matter whether the impact is direct or indirect, and no matter whether the law targets airlines or is instead a law of "general

---

[1]   A4A's members are seven passenger and three cargo air carriers.  (Compl. ¶ 6 (ECF No. 1, PageID.3).)  At least one A4A member has a flight attendant and pilot base in Michigan, and several of the Airlines have ground crew employees in Michigan.  (*Id*. ¶¶ 15, 21 (ECF No. 1, PageID.6-7).)

applicability." *Id.* at 386.  A4A's Complaint plausibly alleges that the ESTA satisfies the "significant impact" standard.  Specifically, A4A alleges that as an actual and logical effect of the ESTA:

 i.  the Airlines' employees will use, and potentially abuse, the ESTA to be absent from work more often (including because the Airlines cannot utilize their long-established accountability tools like points-based attendance programs and doctors' notes for absences covered by the ESTA) (Compl. ¶¶ 63-67 (ECF No. 1, PageID.18-19)); and

 ii.  the increased absences caused by the ESTA have significantly impacted or will significantly impact the Airlines' prices, routes, and/or services, including by causing flight delays and cancellations, mishandled or delayed baggage and cargo, and delays in check-in and boarding (*id.* ¶¶ 68-82 (ECF No. 1, PageID.19-26)).

  Defendant's arguments for dismissal fail.  (*See infra* part I.D.)  Defendant gives short-shrift to the Supreme Court's ADA precedent—and ignores the Sixth Circuit's ADA precedent altogether—while incorrectly suggesting that the "controlling or most appropriate authority" is the *Ninth Circuit's* ADA precedent.  (Mot. at vii (ECF No. 8, PageID.46).)  But the Ninth Circuit's outlier view of ADA preemption conflicts with Supreme Court and Sixth Circuit ADA preemption precedent.  The Court cannot ignore that binding precedent and adopt the Ninth Circuit's incorrect view instead.  Defendant also downplays that all of the cases where A4A or an Airline challenged paid sick leave laws have proceeded to discovery (even the Ninth Circuit case cited by Defendant).  Indeed, two of those cases decided at summary judgment and trial that the ADA <u>preempted</u> such laws.  A4A is equally entitled to proceed to discovery here.

  Because A4A plausibly pleads its ADA preemption claim, the Court should deny the Motion.  (*See infra* part I.)  The Court should also disregard Defendant's premature arguments regarding A4A's request for permanent injunctive relief, which is a merits question that cannot be resolved at the pleading stage.  (*See infra* part II.)

**BACKGROUND**

A.    **The Airlines' CBAs And Company Policies Provide Significant Paid Time Off, Drive Employee Accountability, And Protect Airline Operations**

The employment terms for the Airlines' employees are set forth in detailed collective bargaining agreements ("CBAs"), which are extensively negotiated between the Airlines and unions, or in company policies. (Compl. ¶¶ 28-29 (ECF No. 1, PageID.10).) These CBAs and company policies apply nationwide and ensure uniformity across each Airline's network. (*Id.* ¶¶ 30-31 (ECF No. 1, PageID.11).)

To ensure that the Airlines maintain adequate staffing to continue their services while still providing their employees ample paid time off, the CBAs and company policies contain detailed seniority-based scheduling and vacation-bidding procedures. (*Id.* ¶¶ 34, 36-38 (ECF No. 1, PageID.12-13).) The CBAs and company policies also provide generous paid sick leave, and many employees accrue thousands of hours of sick leave. (*Id.* ¶¶ 34-37 (ECF No. 1, PageID.12-13).) In exchange for these generous paid sick and other time-off benefits, the Airlines have attendance policies designed to drive employee accountability and deter sick leave abuse. (*Id.* ¶¶ 38-39 (ECF No. 1, PageID.13).) The Airlines principally do so by using points systems and doctors' notes. Under the points systems, employees generally receive attendance points for each occurrence of unscheduled absence, which may result in counseling or progressive discipline if an employee's unreliability persists. (*Id.* ¶¶ 40-41 (ECF No. 1, PageID.13-14).) Points generally increase if employees call out sick closer to their scheduled shift or trip. (*Id.* (ECF No. 1, PageID.13-14).) Many Airlines can request doctors' notes from employees if the circumstances suggest abuse or during "critical coverage" periods (e.g., holidays) when there may not be enough employees to operate the scheduled flights. (*Id.* ¶¶ 42-44 (ECF No. 1, PageID.14).)

3

**B.**    **The Michigan Law Has Increased And/Or Will Increase Employee Absences**

The ESTA undermines the Airlines' carefully crafted CBAs and company policies, which strike a balance between employee needs and the complexities of operating a 24-hours-a-day, 7 days-a-week nationwide network of domestic and international flights.  The ESTA highly regulates when, why, and how employees can take ESTA leave, and how the Airlines can respond to those absences.  For example:

i.    The ESTA requires employers to provide up to 72 hours of ESTA leave annually, which employees can use for many reasons including employees' and their family members' sicknesses, medical appointments, and school closures.  (*Id.* ¶¶ 56, 58 (ECF No. 1, PageID.16-17).)  "'Family member' broadly encompasses individuals related by blood or by law, and those individuals 'whose close association with the employee is the equivalent of a family relationship.'"  (Mot. at 3 (ECF No. 8, PageID.49).)

ii.    The ESTA prohibits employers from requiring employees to provide more than 7 days' notice of their intent to take covered leave if the need is "foreseeable," or any advance notice if the need is "not foreseeable."  (Compl. ¶ 59 (citation omitted) (ECF No. 1, PageID.17).)

iii.    The ESTA prohibits employers from (i) using an "absence control policy or attendance point system" for covered absences and (ii) requesting doctors' notes for covered absences, except when the employee is absent for more than three consecutive work days.  (*Id.* ¶¶ 2, 60-61 (citation omitted) (ECF No. 1, PageID.17-18).)

Given that the ESTA displaces the Airlines' sick-leave and attendance policies and allows employees to be absent for more reasons than allowed by the Airlines' CBAs and company policies, it has increased and/or will increase employee absences.  (*Id.* ¶¶ 65-69 (ECF No. 1, PageID.19-20).)

**C.**    **Increased Employee Absences Have Had And/Or Will Have
A Significant Impact On The Airlines' Prices, Routes, Or Services**

Increased absences among Airline employees caused by the ESTA have had and/or will have a significant impact on the Airlines' prices, routes, or services.  (*Id.* ¶¶ 70-84 (ECF No. 1, PageID.20-26).)  For example, because federal regulations require a minimum

4

number of flight attendants on the aircraft before passengers can board, the Airlines typically must find a replacement flight attendant whenever one calls out sick.  (*Id.* ¶ 71 (ECF No. 1, PageID.20).)  This often takes time, which leads to delays in boarding and delayed or cancelled flights.  (*Id.* ¶¶ 71-73 (ECF No. 1, PageID.20-22).)

Increased absences among ground employees also impact the Airlines' services, including by causing the Airlines to reduce or discontinue activities (i) at help desks within the terminals, (ii) for cargo shipping, and (iii) at baggage service offices, and elsewhere.  (*Id.* ¶¶ 76-77, 79 (ECF No. 1, PageID.22-24).)  Increased ground employee absences impact the Airlines' services in other ways, including by causing delays:  (i) at ticket counters and gates, (ii) providing assistance to passengers, (iii) handling baggage and cargo, (iv) taxiing airplanes, and (v) performing required maintenance.  (*Id.* ¶¶ 76-79, 91 (ECF No. 1, PageID.22-24, 27).)  Delays in these and other services often lead to delayed or cancelled flights and other unsatisfactory passenger experiences, including passengers and/or their baggage missing flights.  (*Id.* (ECF No. 1, PageID.22-24, 27).)

Delays and cancellations rarely affect only the passengers on those delayed or cancelled flights.  Given the Airlines' interconnected networks, a single delay or cancellation can cause additional delays or cancellations throughout their systems.  (*Id.* ¶¶ 72-73, 91 (ECF No. 1, PageID.21-22, 27).)  Although the Airlines use mitigation measures to try to minimize the impact of employee absences, the ESTA would cause the Airlines to increase their reliance on, and change how they utilize, these strategies—strategies which, in any event, do not immunize the Airlines' operations from service impacts and are costly.  (*Id.* ¶¶ 81, 92 (ECF No. 1, PageID.25, 27-28).)

## LEGAL STANDARD

Rule 12(b)(6) authorizes the Court to dismiss a claim for relief if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). A4A's Complaint need only contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

### I.      A4A PLAUSIBLY PLEADS AN ADA PREEMPTION CLAIM

Under established precedent, and supported by well-pled factual allegations, A4A plausibly alleges that the ADA preempts the ESTA. Supreme Court and Sixth Circuit precedent addressing ADA preemption under the "significant impact" standard (the latter of which Defendant's Motion ignores) support A4A's Complaint. (*See infra* part I.A.) Indeed, every complaint A4A or an Airline has brought challenging a paid sick leave law has proceeded to discovery, and the courts that apply the Supreme Court's and Sixth Circuit's "significant impact" standard have held those laws preempted. (*See infra* Part I.B.) The Complaint plausibly alleges that the ADA preempts the ESTA (*see infra* part I.C), and Defendant's arguments for dismissal are meritless (*see infra* part I.D).

### A.      The ADA Preempts State Laws That Have A "Significant Impact" On Airline Prices, Routes, Or Services

The ADA "largely deregulated domestic air transport," *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995), "to promote efficiency, innovation, and low prices . . . through maximum reliance on competitive market forces," *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 280 (2014). To "ensure that the States would not undo federal deregulation with

regulation of their own," *Rowe v. N.H. Motor Transp. Ass'n.*, 552 U.S. 364, 368 (2008) (citation omitted), the ADA preempts state laws "*related to* a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1) (emphasis added).[2]

As Defendant concedes, Supreme Court precedent recognizes that the ADA's own language expresses a "broad pre-emptive purpose." (Mot. at 6 (ECF No. 8, PageID.52)); *see Morales*, 504 U.S. at 383-84. In particular, the Supreme Court has held that the ADA preempts state laws that affect airline prices, routes, or services, even if the state law is "not specifically designed to affect" airlines, and even if its "effect is only indirect," as long as the effect is not "too tenuous, remote, or peripheral." *Morales*, 504 U.S. at 386, 390 (citation omitted). Under the Supreme Court's ADA preemption precedent, any state law that has a "significant impact" on airline prices, routes, or services is preempted. *Id.* at 390. Moreover, Supreme Court precedent makes clear that courts can look to the logical effects of a challenged statute to assess preemption. *Rowe*, 552 U.S. at 372-73 (determining, without empirical data, that FAAAA preempted law that "will," "would," or "could" lead to significant impacts); *Morales*, 504 U.S. at 388 (determining "as an economic matter," without empirical data, that false advertising regulation will have a "forbidden effect upon fares"); *see also, e.g.*, *MDA v. Coakley*, 769 F.3d 11, 21 (1st Cir. 2014) (rejecting argument that "empirical evidence is necessary to warrant [] preemption" noting that court can instead "look[ ] to the logical effect'" of challenged laws to assess preemption).

Applying Supreme Court precedent, the Sixth Circuit has likewise recognized that the ADA's preemption clause "is broadly construed" and "express[es] a broad pre-emptive

---

[2]    In *Rowe*, the Supreme Court interpreted the Federal Aviation Administration Authorization Act's ("FAAAA") preemption clause, which is in relevant part identical to the ADA's preemption clause, and interpreted similarly. *See Rowe*, 552 U.S. at 370.

purpose." *Headstream Techs., LLC v. FedEx Corp.*, No. 22-1410, 2023 WL 1434054, at \*2-4 (6th Cir. Feb. 1, 2023) (*citing Morales*, 504 U.S. at 383-84; *Wolens*, 513 U.S. at 223) (holding that the ADA preempted common law claims "based on mishandling and misdelivery of [a] package" because the claims "directly related to FedEx's services as an air carrier"); *Ware v. Tow Pro Custom Towing & Hauling, Inc.*, 289 F. App'x 852, 855-56 (6th Cir. 2008) (holding under *Morales* that a provision in the FAAAA preempted passenger's common law claims regarding trucking company's notice of fees and sales, as the claims "relate on their face" to prices and services). Thus, in the Sixth Circuit, state laws are preempted if they have "'a connection with, or reference to,' carrier 'rates, routes, or services,'" or where they have "a 'significant impact' related to Congress' deregulatory and preemption goals." *Ware*, 289 F. App'x at 855 (*citing Morales*, 504 U.S. at 383-84). This significant impact standard applies even if the "state law has only an 'indirect' effect on rates, routes, or services." *Id.* (*citing Morales*, 504 U.S. at 386). The Sixth Circuit has also confirmed that the term "services" as used in the ADA's preemption clause refers to the "bargained-for or anticipated provision of labor from one party to another." *Headstream*, 2023 WL 1434054, at \*3 (citing favorably to *Hodges v. Delta Air Lines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc) (holding that the ADA's reference to "services" includes "elements of 'the contractual arrangement between the airline and the user of the service,' including—in the context of commercial airlines—'items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself'").)

      **B.     Every Case Where The Airlines Or A4A Asserted<br>            <u>ADA Preemption Of Paid Sick Leave Laws Has Proceeded To Discovery</u>**

      Defendant's Motion largely minimizes that A4A's ADA preemption claim is inherently fact-intensive and that in recent cases where A4A or an Airline challenged state and

local paid sick leave laws on the basis of ADA preemption, each case proceeded to discovery.  In fact, in just the last two years, two federal district courts have denied similar attempts to dismiss A4A's ADA claims challenging laws substantially similar to the ESTA.  In 2024, the U.S. District Court for the District of Colorado denied the defendant's efforts to dismiss A4A's claim that the ADA preempted a Colorado paid sick leave law because the claim was "fact-intensive." *Air Transport Ass'n of Am. v. Moss*, No. 23-02421-DDD-KAS, 2024 WL 4369137, at *6 (D. Colo. Sept. 30, 2024).  And last year, the U.S. District Court for the District of Minnesota also denied a similar effort to dismiss A4A's claim that the ADA preempted a Minnesota paid sick leave law and permitted the case to proceed to discovery.  *Air Transport Ass'n of Am. v. Blissenbach*, No. 24-04657 (D. Minn. May 15, 2025), ECF No. 55 at 34-37.

Moreover, two other district courts applying the Supreme Court's "significant impact" standard both held—at trial and summary judgment, respectively—that the ADA preempted paid sick leave laws similar to the ESTA.[3]  Defendant's attempt to distinguish these two cases falls flat.

In *Air Transport Association of America v. Campbell*, the court held after a nine-day bench trial that the ADA preempted a Massachusetts paid sick leave law similar to the ESTA.  No. 18-10651-ADB, 2023 WL 3773743, at *1 (D. Mass. June 2, 2023).  There, A4A produced "substantial evidence" showing that the Massachusetts law had resulted and would result in employees missing more work because the Massachusetts paid sick leave law enabled

---

[3]    A third case, *Air Transport Ass'n of Am. v. Washington Department of Labor and Industries*, challenging Washington's paid sick leave law, proceeded to discovery.  859 F. App'x 181, 184 (9th Cir. 2021).  However, following the grant of summary judgment for the defendant, the Ninth Circuit held that the ADA did not preempt Washington's paid sick leave law, but only after applying an ADA preemption standard that no other circuit follows.  (More on this *infra* part II.D.2.)

"employees to call out sick for additional reasons beyond those permitted by the Airlines' CBAs and sick leave policies." *Id.* at *11.  The Court continued, "[i]t st[ood] to reason, then, that allowing employees to use [the Massachusetts law] to call out sick for additional reasons will cause an increase in the number of employees calling out sick." *Id.*  From there, the court's "conclusion" that the law was preempted was "logical[]" and "straightforward":

> Airlines depend on their employees, both in-flight and ground crew, to provide services to customers, whether it be ticketing, baggage handling, boarding, provision of food and beverages onboard, or on-time departure.  [The Massachusetts law], in turn, by causing an increase in employees calling out sick, has a clear and direct impact, which is not tenuous, remote or peripheral, on the availability of the Airlines' labor force and therefore their ability to provide these services to customers.

*Id.* at *11-12.

Defendant suggests that the *Campbell* decision was "improper[]" because the court purportedly applied "another variation" of ADA preemption by considering whether the state law "has an impact on airline prices, routes, or services, and that such impact is significant, as opposed to tenuous, remote, or peripheral." (Mot. at 11 (ECF No. 8, PageID.57) (*citing Campbell*, 2023 WL 3773743, at *10).)  But that is not "another variation" of ADA preemption; that is the Supreme Court's (and the Sixth Circuit's) "significant impact" standard.  *See Morales*, 504 U.S. at 390; *Ware*, 289 F. App'x at 855.  Defendant otherwise suggests that the *Campbell* court "improperly shift[ed] the 'connection with or relation to' analysis from the law's terms to the law's 'logical effect.'" (Mot. at 11 (ECF No. 8, PageID.57).)  This, too, is consistent with binding Supreme Court precedent.  Indeed, the Supreme Court has made clear that for an ADA preemption inquiry, "[w]hat is important . . . is the *effect* of a state law, regulation, or provision, not its *form*." *Ginsberg*, 572 U.S. at 283 (emphasis added); *see also infra* part I.D.1.  Moreover, Supreme Court precedent (and precedent from other circuits) also makes clear that courts can

10

consider a challenged statute's logical effect when assessing preemption.  *See supra* at I.A (*citing Rowe, Morales,* and *MDA*).

In *Delta Airlines, Inc. v. N.Y.C. Department of Consumer Affairs*, the court held at summary judgment that the ADA preempted a New York City paid sick leave law as applied to flight attendants.  564 F. Supp. 3d 109, 112 (E.D.N.Y. 2021).  Based on "ample evidence in the record," the court concluded that the paid sick leave law had a "significant" impact on the Airline's services, because it went "directly to the availability of flight attendants, and thus on-time flights, a core service of the airline."  *Id.* at 116, 124.  Defendant suggests that the *Delta* decision is unpersuasive because the court "appeared to have altered the [ADA] preemption test by reasoning that frustrating the purpose of the [ADA] may, alone, render a state law preempted."  (Mot. at 11 (ECF No. 8, PageID.57).)  As a preliminary point, the *Delta* decision did not turn on whether the paid sick leave law frustrated the purposes of the ADA, but rather on the fact that the law would have a significant impact on Delta's services.  *Delta*, 564 F. Supp. 3d 109 at 116, 123-24.  In any event, Defendant's argument is meritless because the Sixth Circuit has recognized that ADA "preemption occurs where state laws have a 'significant impact' related to Congress' deregulatory and preemption goals."  *Ware*, 289 F. App'x at 855 (*citing Morales*, 504 U.S. at 383-84).

Defendant offers this Court no basis to distinguish the present case from each of the similar paid sick leave challenges—five in total—which have <u>all</u> proceeded to discovery.

C.    **A4A Plausibly Alleges That The Michigan Law Has Had, Or Will Have, A "Significant Impact" On The Airlines' Prices, Routes, Or Services**

Accepting A4A's allegations as true and viewing them in the light most favorable to A4A, the Complaint plausibly alleges ADA preemption.  Here, the Complaint alleges that the ESTA has had and/or will have a "significant impact" on the Airlines' prices, routes, or services,

11

because the ESTA "[has] caused and/or will cause an increase in employee absences . . . which in turn has had and/or will have a significant impact on the services provided by the Airlines, including and up to causing and contributing to flight delays and cancellations."  (Compl. ¶ 3 (ECF No. 1, PageID.2).)

A4A alleges that the ESTA "encourages employees to use and potentially abuse sick leave, and thus to be absent from work more frequently."  (*Id.* ¶ 66 (ECF No. 1, PageID.19).)  For example, because "the Michigan Law allows employees to take time off for additional reasons beyond those allowed under the applicable CBA or company policy," "employees have used and/or will use [ESTA leave] to take more time off from work than would be the case without the Michigan Law."  (*Id.* ¶ 67 (ECF No. 1, PageID.19).)  Additionally, because the ESTA prohibits the Airlines from using existing tools to ensure reliable attendance, like "points-based attendance programs" and requiring "medical verification of illness" in certain circumstances, "employees have been and/or will be absent from work more often and/or with less notice."  (*Id.* ¶¶ 68-69 (ECF No. 1, PageID.19-20).)

A4A also alleges that the "increase in employee absences . . . has significantly impacted and/or will significantly impact the Airlines' prices, routes, and/or services, including and up to causing or contributing to flight delays and cancellations."  (*Id.* ¶ 70 (ECF No. 1, PageID.20); *see id.* ¶¶ 70-84 (ECF No. 1, PageID.20-26).)  When a pilot or flight attendant calls out sick, for example, in almost all cases, an Airline must replace the crewmember.  Given the difficulty of finding replacements, the flight may be delayed or cancelled.  (*Id.* ¶ 71 (ECF No. 1, PageID.20).)  That consequence directly affects the services provided to individuals on *that flight*, as well as services provided to individuals on *other flights* because "the Airlines' networks are based upon a complex array of connections and transfers."  (*Id.* ¶ 72 (ECF No. 1,

12

PageID.21).)  Increased absences among above-the-wing and below-the-wing ground crew and maintenance employees cause similar problems:  flights may be delayed or cancelled if critical operations (like de-icing) are performed more slowly because of short-staffing; and passengers may wait longer than usual at the ticket counters, gates, or baggage carousels, or the Airlines may mishandle bags or temporarily cease certain services altogether (*e.g.*, at help desks).  (*See id.* ¶¶ 76-79 (ECF No. 1, PageID.22-24).)[4]

These allegations state a plausible ADA preemption claim.  A4A's allegations track those in *Campbell* and *Delta*, each of which held, after discovery, that the ADA preempts a paid sick leave law because of the service impacts caused by the law.  *See Campbell*, 2023 WL 3773743, at *11-12; *Delta*, 564 F. Supp. 3d at 123-24.  A4A's allegations are also similar to those in *Moss* and *Blissenbach*, where the courts rejected the defendant's efforts to dismiss A4A's ADA preemption claim before discovery.  *See Moss*, 2024 WL 4369137, at *4; *Blissenbach*, No. 24-04657, ECF No. 55 at 34-37.

### D.    Defendant's Arguments That A4A's Complaint Should Be Dismissed Are Without Merit

Defendant's arguments for dismissal are inconsistent with binding precedent and the Complaint's allegations.  In particular, Defendant:

    i.    unsuccessfully attempts to distinguish this case from the Supreme Court's ADA preemption precedent by incorrectly suggesting that the ESTA will not "directly impact[] benefits to customers" (*see* Mot. at 8, 13 (ECF No. 8, PageID.54, 59));

    ii.    asks the Court to follow Ninth Circuit decisions applying an ADA preemption standard that "no other circuit" applies (*Delta*, 564 F. Supp. 3d at 118; *see* Mot. at 8-9 (ECF No. 8, PageID.54-55));

---

[4]    Though the substantive requirements of the ESTA do not yet apply to employees who were covered by CBAs in effect as of February 21, 2025, after those CBAs become amendable according to their terms, the ESTA will apply to those employees.  Mich. Comp. Laws § 408.972.  At that time, the ESTA will logically cause increased absences among those employees.  (Compl. ¶¶ 62-63 (ECF No. 1, PageID.18), 66-69 (ECF No. 1, PageID.19-20).)

iii.    suggests, contrary to Supreme Court precedent, that a generally applicable labor law cannot be preempted by the ADA (*see* Mot. at 12-13 (ECF No. 8, PageID.58-59));

iv.    mischaracterizes A4A's allegations as "speculative" and incorrectly suggests that A4A is required to plead empirical evidence to support its preemption claim (*see* Mot. at 13 (ECF No. 8, PageID.59)); and

v.    mischaracterizes the Complaint's allegations as to the ESTA's significant impact on the Airlines' prices, routes, or services (*see* Mot. at 12 (ECF No. 8, PageID.58)).

**1.    Defendant Fails To Distinguish Supreme
        Court Precedent, Which Has Repeatedly Found
        <u>Generally Applicable Laws Preempted By The ADA</u>**

The Supreme Court has decided three ADA preemption cases which each held that the ADA preempted the generally applicable laws at issue.  (Mot. at 5-8 (ECF No. 8, PageID.51-54).)  First, in *Morales*, the Supreme Court held that the ADA preempted a state's general deceptive-advertising law as applied to an airline because of the "significant impact" the law would have on airfares.  504 U.S. at 389-90.  Next, in *Wolens*, the Supreme Court held that the ADA preempted the application of a state's general consumer-fraud law to an airline's frequent-flyer program, because the law would have a "significant impact" on the airline's rates and services.  513 U.S. at 224-26.  Then, in *Ginsberg*, the Supreme Court held that the ADA preempted a state-law implied covenant claim against an airline regarding a frequent-flyer program because the claim would have a significant effect on ticket prices and "access to flights."  572 U.S. at 284.  Defendant attempts to distinguish those cases from the present one by suggesting that each "involved regulations that directly impacted benefits to customers."  (Mot. at 8 (ECF No. 8, PageID.54); *see also* Mot. at 13 (ECF No. 8, PageID.59) (describing *Morales*, *Wolens*, and *Ginsberg* as involving the "customer-airline relationship, not the employee-airline relationship").)

14

Defendant's attempt to distinguish these cases on that basis misses the mark.  As an initial matter, any myopic focus on the ESTA's "direct" effects is misplaced:  both Supreme Court and Sixth Circuit precedent make clear that state laws can be preempted even if their effects on airline prices, routes, or services are "only indirect."  *See Morales*, 504 U.S. at 386; *Ware*, 289 F. App'x at 855; *see infra* I.D.2.  But even putting that aside, A4A's Complaint *does* allege that the ESTA "impact[s] benefits to customers" and impacts the "customer-airline relationship."  (Mot. at 8, 13 (ECF No. 8, PageID.54, 59).)  For example, the Complaint alleges that the ESTA has caused and/or will cause flight delays or cancellations, longer lines at the ticket counter, and decreased baggage-handling performance.  All of these are "impact[s] . . . to customers" (Mot. at 8 (ECF No. 8, PageID.54)) and, specifically, impacts to "services" as that term is understood by the Sixth Circuit.  *See Headstream*, 2023 WL 1434054, at *3 (citing to *Hodges*, 44 F.3d at 336, which defined "services" to include "items such as ticketing, boarding procedures, . . . and baggage handling, in addition to the transportation itself").

### 2. <u>Defendant's Reliance On Ninth Circuit Precedent Is Misplaced</u>

Rather than meaningfully engage with the Supreme Court's ADA preemption precedent—or address the Sixth Circuit's ADA preemption precedent <u>at</u> <u>all</u>—Defendant suggests that the Ninth Circuit's ADA preemption precedent is the "controlling or most appropriate authority."  (Mot. at vii (ECF No. 8, PageID.46).)  Defendant principally relies on *Air Transport Association of America v. Washington Department of Labor & Industries*, where the Ninth Circuit—on a fact-filled summary judgment record—held that the ADA did not preempt a paid sick leave law because it did not "*bind* the airlines to a particular price, route, or service."  859 F. App'x at 184 (emphasis added); *see* Mot. at 12-14 (ECF No. 8, PageID.58-59).  Even setting aside that the district court decided *Washington Department of Labor & Industries* after discovery, Defendant's reliance on Ninth Circuit caselaw is entirely misplaced.

15

The Ninth Circuit's "binds to" standard is inconsistent with the Supreme Court's (and Sixth Circuit's) "significant impact" standard.  Among other things, the "binds to" standard is incompatible with the Supreme Court's directive that the ADA can preempt "laws of general applicability" that neither "regulate" nor "prescrib[e]" airlines' "rates, routes, and services." *Morales*, 504 U.S. at 385-86 (citation omitted).  Defendant makes no effort to square the "binds to" standard with controlling precedent (nor could she).  Ultimately, the Ninth Circuit's "binds to" ADA preemption standard is an outlier and, accordingly, "[n]o other circuit" has adopted it. *Delta*, 564 F. Supp. 3d at 118-19 ("The Court also does not find the Ninth Circuit's approach to be consistent with the Supreme Court's holding in *Morales*.").  Instead, consistent with Supreme Court (and Sixth Circuit precedent), several other circuits have applied the "significant impact" standard for ADA and FAAAA preemption. *See, e.g.*, *Schwann v. FedEx Ground Package System, Inc.*, 813 F.3d 429, 439 (1st Cir. 2016) (holding that a state independent contractor law was preempted by FAAAA because it would "logically be expected to have a significant impact on the actual routes" of the carrier); *Air Evac EMS v. Cheatham*, 910 F.3d 751, 767 (4th Cir. 2018) (finding state laws preempted under ADA; "It is enough that the state law at issue has a 'forbidden significant effect' on prices, even without referencing them directly" (citation omitted)); *Witty v. Delta Air Lines*, 366 F.3d 380, 383 (5th Cir. 2004) (holding that the ADA preempted a negligence claim regarding seat layout because it would have a "'forbidden significant effect' on [Airline] prices" (citation omitted)); *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1055 (7th Cir. 2016) (holding that ADA preempts state laws that "will have a significant impact on the prices, routes, [or] services that [Airlines] offer[] to [their] customers"); *Watson v. Air Methods Corp.*, 870 F.3d 812, 818 (8th Cir. 2017) (explaining that ADA preemption turns on whether challenged claims "significantly impact the contractual service relationship between the

16

air carrier and its customers"); *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1255 (11th Cir.

2003) (holding that ADA preemption turns on whether law has "a sufficient—*i.e.*, significant—

impact on . . . services").

### 3. Contrary To Defendant's Suggestions, The General Applicability Of The Michigan Law Does Not Affect The Preemption Analysis

Defendant also argues that the ESTA is a "generally applicable state labor law,"

with no "rational connection" to airline "prices, routes, and services."  (Mot. at 13 (ECF No. 8,

PageID.59).)  According to Defendant, "[h]ad Congress intended to preempt states' employment-

related laws, it certainly could have expressly preempted all state regulation and not limited it to

those regulations impacting only the airlines' prices, routes, and services."  (Mot. at 12-13 (ECF

No. 8, PageID.58-59) (suggesting that the ESTA only impacts the "employee-airline

relationship").)  Defendant's arguments are wrong.

As an initial matter, Defendant's suggestion that the ESTA does not "impact

airline . . . services" or that it only impacts the "employee-airline relationship" is at odds with the

Complaint's allegations:  airline services are impacted when customers wait longer at the ticket

counter, gates, or tarmac, flights are delayed or cancelled, or baggage and cargo are mishandled.

(Compl. ¶¶ 71, 76-77 (ECF No. 1, PageID.20, 22-24).)  Defendant cannot overlook or rewrite

these allegations.  But Defendant is also wrong to suggest that the ADA cannot preempt

"generally applicable state labor law[s]" or "employment-related laws" like the ESTA, for at

least four reasons:

*First*, Defendant's suggestion that the ADA cannot preempt generally applicable

state laws like the ESTA is inconsistent with binding precedent:  *Morales* rejected "the notion

that only state laws specifically addressed to the airline industry are preempted, whereas the

ADA imposes no constraints on laws of general applicability."  504 U.S. at 386.  *Morales*

17

explained:  "Besides creating an utterly irrational loophole (there is little reason why state impairment of the federal scheme should be deemed acceptable so long as it is effected by the particularized application of a general statute), this notion similarly ignores the sweep of the 'relating to' language."  *Id.*  Consistent with this precedent, multiple other courts have expressly rejected Defendant's argument that generally applicable state labor laws cannot be preempted.  *See, e.g.*, *Costello*, 810 F.3d at 1055 (rejecting a "categorical rule exempting from preemption all generally applicable state labor laws" and instead requiring "an individualized inquiry" into each law (citation omitted)); *Air Transport Ass'n of Am. v. Healey*, No. 18-10651, 2021 WL 2256289, at \*11 (D. Mass. June 3, 2021) (collecting First Circuit precedent and explaining that "the [c]ourt must carefully evaluate the [state paid sick leave law], even though it is a generally-applicable labor law, to determine its impact on airline prices, routes, or services") (*citing, e.g.*, *MDA*, 769 F.3d at 20 ("We refuse . . . to adopt such a categorical rule exempting from [FAAAA] preemption all generally applicable state labor laws.")); *Botz v. Omni Air Int'l*, 286 F.3d 488, 495 (8th Cir. 2002) (finding whistleblower law of "general applicability" was preempted as applied to an airline to the extent it authorized an employee to refuse an assignment), *overruled in other part by Watson v. Air Methods Corp.*, 870 F.3d 812 (8th Cir. 2017).  Defendant's argument in this regard also conflicts with Sixth Circuit precedent, which has suggested that laws impacting the "employee-airline relationship" can be preempted.  *See Wellons v. Nw. Airlines, Inc.*, 165 F.3d 493, 495 (6th Cir. 1999) (suggesting that other cases that found generally-applicable state regulations regarding hiring decisions based on applicants' "physical characteristics" preempted by the ADA were "decided correctly," as the physical characteristics of airline employees "might have some bearing on the individual's ability to render service safely and efficiently," but

18

holding that law prohibiting race-based discrimination in hiring was too tenuous to prices, routes, or services to be preempted by the ADA).

*Second*, had Congress wanted to exempt a "generally applicable state labor law" or "employment-related laws," Mot. at 12-13 (ECF No. 8, PageID.58-59), from the scope of ADA preemption, it could have done so.  For example, the preemption clause of the FAAAA—which Congress substantially modeled after the ADA's preemption clause, *Rowe*, 552 U.S. at 370—contains a separate exception that expressly preserves "the safety regulatory authority of a State with respect to motor vehicles."  49 U.S.C. § 14501(c)(2)(A).  There are no "labor law" exceptions (or any other relevant exceptions) in the text of the ADA's preemption clause.  The Court should reject Defendant's apparent attempt to read one in.  *See Rowe*, 552 U.S. at 374 (rejecting argument that state's law could not be preempted because it was an "effort[] to protect its citizens' public health," as the preemption clause says "nothing about a public health exception").

*Third*, as noted *supra*, the ADA was designed "to promote 'efficiency, innovation, and low prices' . . . through 'maximum reliance on competitive market forces.'" *Ginsberg*, 572 U.S. at 280 (citation omitted).  And, "pre-emption [can occur] at least where state laws have a 'significant impact' related to Congress' deregulatory and pre-emption-related objectives." *Rowe*, 552 U.S. at 371.  The CBAs and company policies (including their accountability tools like points-based attendance programs and doctors' notes requirements) are the product of competitive market forces, and overriding them with state laws like the ESTA would defy the ADA's deregulatory purpose.

*Fourth*, Defendant's reliance on *California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.*, 519 U.S. 316 (1997), changes nothing.

19

*Dillingham* considered the National Labor Relations Act and the Employee Retirement Income Security Act, not the ADA. But, in any event, Defendant's suggestion that *Dillingham* requires this Court to "assume[] areas typically regulated by states are not preempted unless expressly intended by Congress," Mot. at 11 (ECF No. 8, PageID.57), is wrong for multiple reasons. *First*, Defendant has made no showing that non-occupational paid sick leave was "typically regulated by states" when the ADA was enacted in 1978. *Second*, since *Dillingham*, the Supreme Court has reiterated that courts interpreting express preemption clauses, such as the express preemption clause in the ADA, "do not invoke any presumption against preemption." *Puerto Rico v. Franklin California Tax-Free Trust*, 579 U.S. 115, 125 (2016). Rather, the preemption analysis is just like any other statutory inquiry: it must "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Chamber of Commerce v. Whiting*, 563 U.S. 582, 594 (2011) (citation omitted). And when "the language of the statute . . . is plain," that "is also where the inquiry should end." *Franklin*, 579 U.S. at 125 (citation omitted). Put simply, "courts must presume that a legislature says in a statute what it means and means . . . what it says." *Connecticut National Bank v. Germain*, 503 U.S. 249, 253-54 (1992). As a result, *Dillingham* does nothing to assist Defendant's misplaced argument regarding "generally applicable state labor law[s]."

### 4. Defendant Is Wrong To Suggest That The Complaint's Allegations Are "Speculative" Or That The Complaint Must Contain Empirical Allegations

Although the Complaint contains dozens of detailed allegations, Defendant criticizes those allegations by suggesting that A4A alleges "purely speculative" harms without "empirical allegation[s]." (Mot. at 13 (ECF No. 8, PageID.59).) Defendant is wrong.

The Complaint alleges that the ESTA "has caused" significant impacts to the Airlines' services, which is more than sufficient to withstand dismissal. (Compl. ¶¶ 62-82 (ECF

No. 1, PageID.18-26).)  There is nothing "speculative" about those allegations, which must be taken as true on a motion to dismiss.  *See Courtright*, 839 F.3d at 518.  To the extent that Defendant finds fault with A4A's allegations that the ESTA "will cause" significant impacts to the Airlines' services, that changes nothing.  As noted above, courts can look to the "logical" effects of a challenged statute to assess preemption, and empirical evidence is <u>not</u> required.  *See supra* at I.A.

The Eighth Circuit's *Botz v. Omni Air International* decision also is instructive on this point.  There, the court held that the ADA preempted a flight attendant's claim under a generally-applicable whistleblower law that she was wrongfully discharged for refusing to fly a trip she believed violated federal regulations.  286 F.3d 488, 490 (8th Cir. 2002), *overruled in other part by Watson v. Air Methods Corp.*, 870 F.3d 812 (8th Cir. 2017).  In holding that the ADA preempted the claim, the court focused "on the *potentially* disruptive effect of a crewmember refusing a work assignment," including that it "*can* cancel [a] flight."  *Id.* (emphasis added); *Watson*, 870 F.3d at 816 (emphasis added).  Although there was no evidence that any flights had actually been cancelled, because that was a *potential* outcome of the flight attendant's absence, the court found that "authorizing a flight attendant to refuse assignments" "has a forbidden connection with air-carrier services" where cancelled flights represent a "significant" interruption of the carrier's "service."  *Botz*, 286 F.3d at 494-95.  Similarly, here, although A4A has alleged that the ESTA "has caused" service impacts, Compl. ¶¶ 62-82 (ECF No. 1, PageID.18-26), even the fact that such service outcomes are a "potential[]" and "logical" result of the ESTA is also independently sufficient to warrant preemption at trial (and to withstand dismissal now).

21

**5.      Defendant Cannot Rewrite A4A's Complaint**

Defendant otherwise mischaracterizes A4A's Complaint as "A4A's argument, in essence, boils down to this:  the ESTA affords employees additional sick leave uses and protection, this may require additional hiring, thus the ESTA should be preempted."  (Mot. at 12 (ECF No. 8, PageID.58).)  Those are *not* A4A's allegations, and Defendant cannot seek dismissal based on a strawman framing of A4A's detailed Complaint.  Far from merely alleging that the ESTA "may require additional hiring," the Complaint alleges, in detail, that the ESTA has and will impact numerous of the Airlines' services, including by causing longer waits at the ticket counters, gates, or baggage carousels, disrupting the Airlines' baggage services, or causing flight delays or cancellations.  (Compl. ¶¶ 62-82 (ECF No. 1, PageID.18-26).)  These allegations go much further than Defendant suggests.

In any event, the Complaint specifically alleges that the Airlines' mitigation measures—including "hiring more employees"—"cannot and do[] not insulate the Airlines from the service impacts attributable to employee absences."  (Compl. ¶ 81 (ECF No. 1, PageID.25).)  Moreover, Defendant's apparent suggestion that the Airlines should change how they provide their services (*e.g.*, by hiring more employees or employing other mitigation strategies) in order to lessen the ESTA's impact on their services merely proves that the ESTA significantly impacts the Airlines' services in the first place.  *See DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81, 88 (1st Cir. 2011) (holding state tip law preempted and finding argument that airline could comply with the law by making minor adjustments, like posting signs, was like "walking into a rotating propeller" because such "advertising and service arrangements are just what Congress did not want states regulating, whether at high cost or at low").

22

## II.    A4A'S COMPLAINT APPROPRIATELY SEEKS A PERMANENT INJUNCTION

A4A's Complaint sets out in its "Prayer for Relief" that if the Court ultimately finds that the ADA preempts the ESTA, the Court should issue as a *remedy* a "permanent injunction prohibiting enforcement of the ESTA against the Airlines." (Compl. ¶ 5 (ECF No. 1, PageID.3)); *see also Madej v. Maiden*, 951 F.3d 364, 369 (6th Cir. 2020) (injunctive relief "is a remedy, not a claim"). Defendant argues that A4A has not sufficiently alleged its entitlement to a permanent injunction. (Mot. at 14 (ECF No. 8, PageID.60).) Defendant's arguments are premature: whether or not A4A is entitled to the remedy of a permanent injunction will be decided when this case is decided on the merits (*e.g.*, at summary judgment or trial), *not* at the pleading stage. *See Banks v. United States*, 614 F.2d 95, 96 (6th Cir. 1980) ("Unless a case is decided on summary judgment, a permanent injunction must await a trial on the merits."); *Wedgewood Ltd. P'ship I v. Twp. Of Liberty, Ohio*, 610 F.3d 340, 349 (6th Cir. 2010) (affirming permanent injunction and holding "[i]n the usual course, a district court should conduct an evidentiary hearing before issuing a permanent injunction," but may instead rule on summary judgment if "no factual issues remain[] for trial" (citation omitted)).

Remarkably, only two of the seventeen cases that Defendant cites in Section I.B of her Motion even involved *permanent* injunctions; the vast majority (fourteen) of the cases concern *preliminary* injunctions.[5] A4A has not sought a preliminary injunction here, so those cases are inapposite. Notably, the only two cases cited by Defendant that actually considered *permanent* injunctions were decided after the cases were decided on the merits.[6] That is

---

[5]    A few of Defendant's cases concern whether to issue stays of enforcement on appeal. Those are also inapposite to A4A's Complaint.

[6]    In *Jolivette v. Husted*, the court denied a permanent injunction after a "trial on the merits" that included approximately 20 joint exhibits, a review of the findings and transcript of a protest hearing held by the Ohio Board of Elections, and sworn testimony presented at trial. 694 F.3d

precisely how this case should proceed:  if A4A succeeds on its ADA preemption claim on the merits (*i.e.*, at summary judgment or trial), this Court can then consider whether A4A is entitled to a permanent injunction enjoining Defendant from enforcing the ESTA against the Airlines. While such a remedy would be the natural and obvious consequence of finding that the ADA preempts the ESTA as applied to the Airlines,[7] the Court need not consider this question now. As a result, the Court should not now consider the arguments made in Section I.B of Defendant's Motion, which provide no basis to dismiss the Complaint.

## CONCLUSION

The Court should deny the Motion.  To the extent it finds any deficiency in the Complaint, the Court should give A4A an opportunity to amend.

---

760, 764, 767 (6th Cir. 2012); *see also Jolivette v. Husted*, 886 F. Supp. 2d 820, 822, n.2 (S.D. Ohio 2012); *Jolivette v. Husted*, No. 2:12-603 (S.D. Ohio July 16, 2012), ECF No. 11 at 1-2.  In *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, Justice Rehnquist stayed a permanent injunction the district court had issued on summary judgment.  434 U.S. 1345, 1347 (1977); *see also Orrin W. Fox Co. v. New Motor Vehicle Bd. of State of Cal.*, 440 F. Supp. 436 (C.D. Cal. 1977).

[7]    For example, after the lower court in *Morales* found that the general deceptive-advertising law at issue was preempted by the ADA, the court issued a permanent injunction enjoining the Texas Attorney General from enforcing it against the Airlines.  504 U.S. at 380. That result was affirmed by the Supreme Court.  *Id.* at 390-91.  Similarly, in finding that paid sick leave laws were preempted by the ADA, courts in New York and Massachusetts granted permanent injunctions precluding enforcement.  *Delta*, 564 F. Supp. 3d at 112; *Campbell*, 2023 WL 3773743, at *13.

Dated:  February 25, 2026

Respectfully submitted,

/s/ Stephanie A. Douglas
Stephanie A. Douglas
Roger P. Meyers
Nicole K. Haelterman
BUSH SEYFERTH PLLC
100 West Big Beaver Road, Suite 400
Troy, MI  48084
Telephone:  (248) 822-7800
douglas@bsplaw.com
meyers@bsplaw.com
haelterman@bsplaw.com

/s/ Alisha Q. Nanda
James R. Carroll
Alisha Q. Nanda
Emily M. Jennings
Christopher L. Corcoran
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
Telephone:  (617) 573-4800
james.carroll@skadden.com
alisha.nanda@skadden.com
emily.jennings@skadden.com
christopher.corcoran@skadden.com

*Counsel for Plaintiff*
*Air Transport Association of America, Inc.*
*d/b/a Airlines for America*

## LOCAL RULE 7.2 CERTIFICATE OF COMPLIANCE

I, Stephanie A. Douglas, certify that, in preparation of this Brief, I used Microsoft® Office Word Version 2511, and that this word processing program has been applied specifically to include all text, including headings, footnotes, and quotations, in the following word count.  I further certify that the above-referenced Brief contains 7,619 words.

/s/ Stephanie A. Douglas
Stephanie A. Douglas

25