UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AIR TRANSPORT ASSOCIATION OF
AMERICA, INC. d/b/a AIRLINES FOR
AMERICA,

               Plaintiff,

v

SUSAN CORBIN, in her official capacity
as Director of Labor and Economic
Opportunity,

               Defendant.

Case No. 1:25-cv-01945-JMB-SJB

HON. JANE M. BECKERING

MAG. SALLY J. BERENS

Stephanie A. Douglas (P70272)
Nicole Haelterman (P82922)
Roger Peter Meyers (P73255)
Co-Counsel for Plaintiff
Bush Seyferth PLLC
100 West Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
douglas@bsplaw.com
haelterman@bsplaw.com
meyers@bsplaw.com

James R. Carroll
Alisha Q. Nanda
Emily M. Jennings
Christopher Corcoran
Co-Counsel for Plaintiff
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
alisha.nanda@skadden.com
emily.jennings@skadden.com
christopher.corcoran@skadden.com

Zachary A. Risk (P75392)
Kami L. Trescone (P83048)
Assistant Attorneys General
Attorneys for Defendant
Department of Attorney General
Labor Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7641
RiskZ1@michigan.gov
TresconeK@michigan.gov

                                             /

**SUSAN CORBIN'S REPLY BRIEF IN SUPPORT OF HER MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Zachary A. Risk (P75392)
Kami L. Trescone (P83048)
Assistant Attorneys General
Attorneys for Defendant
Department of Attorney General
Labor Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7641
RiskZ1@michigan.gov
TresconeK@michigan.gov

Dated: March 11, 2026

**TABLE OF CONTENTS**

<u>Page</u>

Index of Authorities ................................................................................................ii

Argument ............................................................................................................. 1

I.  The ESTA does not have "the forbidden significant effect" on airline
    rates, routes, and services that A4A invites this Court to believe.................... 1

    A.  ADRA preemption analysis requires the ESTA have more than a
        tenuous, remote, and peripheral impact on the airlines. ...................... 1

    B.  The ESTA's impact is tenuous, remote, and peripheral, and
        there are intervening factors that cause the impact A4A alleges. ......... 4

    C.  Discovery will not save A4A's complaint.............................................. 7

Conclusion and Relief Requested ......................................................................... 8

Certificate of Compliance .................................................................................... 9

Certificate of Service............................................................................................ 10

# INDEX OF AUTHORITIES

Page

**Cases**

*Abdu-Brisson v. Delta Airlines, Inc.,*
  128 F.3d 77 (2nd Cir. 1997) ..................................................................... 6

*Air Transp. Ass'n. of America, Inc. v. Washington Dep't. of Labor and Indus.,*
  859 Fed. Appx. 181 (9th Cir. 2021), *cert. denied* 142 S. Ct. 2903 (2022) ......... 1, 3, 7

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................... 1

*Branche v. Airtran Airways, Inc.,*
  342 F.3d 1248 (11th Cir. 2003) ................................................................ 6

*Day v. SkyWest Airlines,*
  45 F.4th 1181 (10th Cir. 2022 ................................................................. 3

*Dilts v. Penske Logistics, LLC,*
  769 F.3d 637 (9th Cir. 2014) ................................................................ 3, 6

*Hawaiian Airlines, Inc. v. Noris,*
  512 U.S. 246 (1994) ............................................................................... 3

*Headstream Techs., LLC v. FedEx Corp.,*
  No. 22-1410, 2023 WL 1434054 (6th Cir. Feb. 1, 2023) .................................... 2, 5

*Morales v. Trans World Airlines, Inc.,*
  504 U.S. 374 (1992) ...................................................................... 1, 2, 3, 5

*Rowe v. New Hampshire Motor Transp. Ass'n.,*
  552 U.S. 364 (2008) ............................................................................... 4

*Ware v. Tow Pro Custom Towing & Hauling, Inc.,*
  289 F. App'x 852 (6th Cir. 2008) .......................................................... 2, 3

*Wellons v. Northwest Airlines, Inc.,*
  165 F.3d 493 (6th Cir. 1999) ................................................................... 6

**Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................................. 1, 5

## ARGUMENT

**I.     The ESTA does not have "the forbidden significant effect" on airline rates, routes, and services that A4A invites this Court to believe.**

A4A's response further supports dismissal under Fed. R. Civ. P. 12(b)(6) as it demonstrates the vague, exaggerated, peripheral impact of the ESTA that A4A alleges.  Under any iteration of the ADRA preemption analysis, the ESTA's baseline sick leave protections for Michigan workers are not materially related to airline rates, routes, or services and, thus, the ESTA cannot and will not have "the forbidden significant effect" detailed in *Morales*.  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 388 (1992).  At bottom, even assuming A4A's factual allegations are true, A4A's complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Thus, its complaint should be dismissed.

**A.     ADRA preemption analysis requires the ESTA have more than a tenuous, remote, and peripheral impact on the airlines.**

A4A cites to two unpublished Sixth Circuit Court of Appeals decisions and suggests that ADRA preemption is nearly limitless.  (ECF 9, PageID.78–79.)  But the reality is that the Ninth Circuit Court of Appeals is the only appellate court to analyze whether a state paid sick leave law like the ESTA is preempted under the ADRA (it is not).  *Air Transp. Ass'n. of America, Inc. v. Washington Dep't. of Labor and Indus.*, 859 Fed. Appx. 181 (9th Cir. 2021), *cert. denied* 142 S. Ct. 2903 (2022).  Still, the Sixth Circuit cases that A4A cites are neutral to this dispute and do not

1

meaningfully assist this Court's analysis beyond reaffirming general ADRA preemption principles.

In *Headstream Technologies, LLC v. FedEx Corporation*, the Court acknowledged that ADRA preemption is to be broadly construed, but that some claims may be "'too tenuous, remote, or peripheral' for preemption to apply." *Headstream Techs., LLC v. FedEx Corp.*, No. 22-1410, 2023 WL 1434054, at *2 (6th Cir. Feb. 1, 2023), *quoting Morales*, 504 U.S. at 390. The Court also acknowledged that other "courts have struggled to determine when a claim's connection to carrier services is sufficiently strong to merit preemption, and when it is not." *Id.* at *2. And in noting that no bright line has been established, it also declined to do so. *Id.* The Court concluded that the state common law claims at issue (fraud, tortious interference, breach of contract), which were premised on a misrepresentation of delivery, were preempted because they "would regulate how FedEx operates in its core business." *Id.* at *3. Because *Headstream Technologies* involved *a direct regulation on the air carrier's core business services*, and otherwise simply repeated *Morales*'s broad-but-not-limitless preemption principles, this case is not helpful in guiding this Court's decision.

A4A also cites a non-ADRA preemption case, *Ware v. Tow Pro Custom Towing & Hauling, Inc.*, 289 F. App'x 852 (6th Cir. 2008), but that case is likewise unhelpful. There, the Court was faced with a preemption defense invoking different federal statutes (related to the trucking industry) to a conversion claim involving a motor vehicle. *Ware*, 289 F. App'x at 854. The Court hinged much of its analysis on

the fact that "storage" of the truck fell within the definition of "transportation" in

the relevant statute, and held that the claims were preempted because *they related*

*on their face to the company's prices and services.  Id*. at 856.  Again, this is a case

that (i) merely reiterated the applicable standard expressed in *Morales*, and (ii)

involved a direct regulation on a company's rates, routes, or services.  Thus, *Ware*

likewise fails to guide this Court's decision.

As a result, we are left with the following guiding principles of ADRA

preemption analysis.  First, *Morales* held that Congress intended ADRA preemption

to be broad, but it does not preempt laws that have limited effect on rates, routes,

and services, i.e. effects that are too tenuous, remote, and peripheral.  *Morales*, 504

U.S. at 383, 390.  Second, *Ware* observed that state laws are preempted if they have

a "significant impact" on rates, routes, or services.  *Ware*, 289 Fed. App'x at 855

(*citing Morales*, 504 U.S. at 390).  Third, that "[p]re-emption of employment

standards 'within the traditional police power of the State' 'should not be lightly

inferred.'" *Hawaiian Airlines, Inc. v. Noris*, 512 U.S. 246, 252 (1994).  And fourth,

that

> generally applicable background regulations that are several steps
> removed from prices, routes, or services, . . . are not preempted, even if
> employers must factor those provisions into their decisions about the
> prices that they set, the routes that they use, or the services that they
> provide. [*Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 646 (9th Cir.
> 2014); *see also Day v. SkyWest Airlines*, 45 F.4th 1181, 1188 (10th Cir.
> 2022.)]

Importantly, the Ninth Circuit's analysis under Washington's paid sick leave law is

consistent with these principles.  *Air Transp. Ass'n. of America, Inc.*, 859 Fed. Appx.

at 185 (holding that "some increase in flight delays and cancellations, . . . falls short

of demonstrating that complying with the [sick leave law] will severely disrupt operation of interstate transportation") (internal quotation marks omitted).  This is precisely what A4A presents, and these principles require dismissal of its complaint.

> **B.**     **The ESTA's impact is tenuous, remote, and peripheral, and there are intervening factors that cause the impact A4A alleges.**

The ESTA does not have a significant impact on airline rates, routes, and services because any alleged effect is too tenuous, remote, and peripheral.  *Rowe v. New Hampshire Motor Transp. Ass'n.*, 552 U.S. 364, 371 (2008).  The ESTA, then, is not preempted.  A4A argues that the ESTA "has and/or will have" a significant impact, but merely inserting the term "significant" into the phrase does not make it so.  Indeed, A4A's response highlights the tenuous impact of affording baseline sick leave protections to airline employees.  The clearest explanation that A4A offers for the alleged significant impact is:

> When a pilot or flight attendant calls out sick, for example, in almost all cases, an Airline must replace the crewmember.  Given the difficulty of finding replacements, the flight may be delayed or cancelled.  That consequence directly affects the services provided . . . .  [(ECF No. 9, PageID.83.)]

A4A's complaint makes the same allegation using the conditional: "If there is difficulty in finding a replacement . . . ."  (ECF No. 1, PageID.20–21.)  But nowhere does A4A explain why the ESTA makes finding replacement crewmembers difficult, which is *the direct and significant cause* of potential flight delays and cancelations.  A4A's strained connection is precisely when courts are hesitant to find preemption.

4

*See, e.g., Headstream Techs, LLC v FedEx Corp*, No. 22-1410, 2023 WL 1434054, *5 (6th Cir. February 1, 2023) ("Since *Morales*, the Court's ERISA cases have come to recognize that a literal reading of the elastic phrase 'related to' could prohibit courts from applying nearly all state laws to employee welfare plans because, 'as many a curbstone philosopher has observed, everything is related to everything else.'") (Murphy, J., concurring in part.)

A4A's other key allegation is likewise insufficient to withstand a 12(b)(6) motion.  First, A4A alleges that the ESTA "encourages employees to use and potentially abuse sick leave, and thus to be absent from work more frequently." (ECF No. 1, PageID.19.)  Nothing in the text of the ESTA encourages or hints at encouraging employees to abuse sick leave.  Rather, it provides for specific uses, and nothing in the ESTA prohibits employers from confirming that the requested use is permissible.  A4A's allegation that the ESTA encourages crewmembers to abuse sick leave is simply untethered to the language of the law.  Second, A4A alleges that the "increase in employee absences . . . has significantly impacted *and/or will significantly impact* the Airlines' prices, routes, and/or services, including and up to causing or contributing to flight delays and cancellations."  (ECF No.1, PageID.20 (emphasis added).)  This allegation is nothing more than a vague assertion of hypothetical impact that fails to meet the "significant impact" threshold for an enforceable claim of ADRA preemption.  As the ESTA has been in effect for nearly a year, A4A should be able to allege more (or at least *some*) specific impacts, but it does not, and this is telling.

5

At most, the impact the ESTA has on airline rates, routes, and services is no different than the impact of a state anti-discrimination law, which has been held not preempted under the ADRA.  *See, e.g., Wellons v. Northwest Airlines, Inc.*, 165 F.3d 493, 495 (6th Cir. 1999) (holding that a race discrimination claim was not preempted); *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1258–1259 (11th Cir. 2003) (explaining that employment discrimination actions have typically been held to fall outside the scope of ADRA preemption); and *Abdu-Brisson v. Delta Airlines, Inc.*, 128 F.3d 77, 84 (2nd Cir. 1997) (holding state age discrimination statute was not preempted).  And as the Second Circuit Court of Appeals aptly noted, [p]ermitting full operation of . . . [anti-]discrimination law[s] will not affect competition between airlines—the primary concern underlying the [ADRA]." *Abdu-Brisson*, 128 F.3d at 84.  The ESTA's prohibition on airlines penalizing crewmembers for using sick leave under its points-based system is no different. Again, the ESTA is akin to the background regulations that employers must factor into their rates, routes, and services.  See *Dilts*, 769 F.3d at 646.

In sum, while the ESTA allows crewmembers to use sick leave for more reasons and prohibits airlines from penalizing crewmembers for using sick leave, this does not establish a significant impact.  A4A's argument that the ESTA significantly impacts the airlines also flies in the face of its assertion that A4A already offers "generous" sick leave benefits.  Adding a few more hours per year and preventing retaliation for using sick leave is merely a background regulation that does not fall under the preemption umbrella.  And because of this tenuous

relationship, the ESTA cannot be said to have a significant impact on airline rates, routes, or services, and A4A's complaint should be dismissed.

### C.    Discovery will not save A4A's complaint.

A4A urges this Court to allow its case to proceed to discovery because other courts have been reluctant to dismiss similar complaints on the pleadings.  (ECF No. 9, PageID.79–82.)  While it is true that a handful of district courts have delayed their ruling, that alone does not warrant denying Corbin's motion and allowing discovery.  Notably, A4A argues that ADRA preemption under the ESTA is a fact-intensive inquiry and should proceed to discovery, but in the same breath also asserts that it need not allege any empirical facts and that the logical effect of the ESTA is a significant impact.  (ECF No.9, PageID.79–82.)  A4A cannot have it both ways.  Its contradictory assertions underscore that discovery is not needed because the ESTA, as written, cannot have a significant impact on airline rates, routes, or services.  And the only logical conclusion is that it minimally enhances sick leave benefits that the airlines already factor into their cost of doing business.  This minimal impact alone "falls short of demonstrating that complying with the [ESTA] will 'severely disrupt operation of interstate transportation.'"  *Air Transp. Ass'n. of America, Inc. v. Washington Dep't. of Labor and Indus.*, 859 Fed. Appx. 181, 185 (9th Cir. 2021), *cert. denied* 142 S. Ct. 2903 (2022).  For these reasons, discovery will not save A4A's claim and this Court should dismiss A4A's complaint.

## CONCLUSION AND RELIEF REQUESTED

A4A's complaint fails to state an enforceable claim of preemption under the ADRA because the ESTA does not and cannot have a significant impact on airline rates, routes, or services. Even assuming A4A's vague assertions are true, Supreme Court principles guide this Court in concluding that a generally applicable employment law such as the ESTA is not preempted because its effects are too tenuous. Finally, the only Court of Appeals to squarely decide this issue agreed that a state paid sick leave law is not preempted, and that decision is consistent with principles from the Supreme Court and other circuit courts. For these reasons, A4A's complaint should be dismissed with prejudice.

Respectfully submitted,

s/ Zachary A. Risk
Zachary A. Risk (P75392)
Assistant Attorney General
Attorney for Defendant
Department of Attorney General
Labor Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7641
Dated:  March 11, 2026                    RiskZ1@michigan.gov

8

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of LCivR 7.2(c)

because, excluding the part of the document exempted by said rule, this brief

contains no more than 4,300 words.  This document contains 2,012 words.

2.     In compliance with LCivR 7.2(b)(ii) and LCivR 10.1, this document has

been prepared in a proportionally spaced typeface using Microsoft Word for Office

365 in 12-point Century Schoolbook font.

*/s/ Zachary A. Risk*
Zachary A. Risk (P75392)
Assistant Attorney General
Attorney for Defendant
Department of Attorney General
Labor Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7641
RiskZ1@michigan.gov

9

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2026, I electronically filed the above documents with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

/s/ Zachary A. Risk
Zachary A. Risk (P75392)
Assistant Attorney General
Attorney for Defendant
Department of Attorney General
Labor Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7641
RiskZ1@michigan.gov

10